# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,

               Respondent,

        v.

SAMUEL LEE IRWIN,

               Appellant.

No. 72338-3-I

ORDER WITHDRAWING OPINION
AND SUBSTITUTING OPINION

The court has determined that the unpublished opinion filed on October 26, 2015, should be withdrawn and a substitute published opinion be filed in its place. Because the substitute opinion will be published, the appellant's motion to publish is now moot. Now, therefore, it is hereby

ORDERED that the unpublished opinion filed on October 26, 2015, be withdrawn and a substitute published opinion be filed in its place.

DATED this 14th day of December, 2015.

Trickey, J.

Spearman, C.J.

Leach, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72338-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| SAMUEL LEE IRWIN, | ) | |
| Appellant. | ) | FILED: December 14, 2015 |

TRICKEY, J. — Samuel Irwin pleaded guilty to three counts of child molestation and one count of possession of depictions of minors engaged in sexually explicit conduct. On appeal, Irwin argues that a community custody condition ordering him not to "frequent areas where minor children are known to congregate" is unconstitutionally vague and that a community custody condition prohibiting him from possessing access to certain technology was not crime-related and was too broad. Finding that the condition prohibiting Irwin from frequenting areas where children congregate is unconstitutionally vague, we reverse that condition and remand for resentencing. Further, we affirm the condition prohibiting Irwin from possessing any digital media storage device.

## FACTS

Samuel Irwin had sexual contact with three underage females between June 1, 2013 and September 15, 2013. After reports of these incidents came to the attention of the Anacortes Police Department and child protective services, the Anacortes Police Department and the Spokane County Sheriff's Office began interviewing the children and investigating Irwin.

On January 30, 2014, the police took custody of Irwin under an "investigative hold."[1] A few days later, on February 3, 2014, the police obtained a warrant for Irwin's arrest.

Several of the parents and children questioned by the police mentioned that Irwin had photographs on his computer that appeared to be child pornography. Officers obtained search warrants to locate Irwin's computer and digital camera and to analyze the contents of both. The searches revealed a history of Internet searches related to child pornography and ten photographs on Irwin's computer of nude or partially nude girls.[2] The photographs were all of girls from the waist down. The photographs were of girls' vaginas and anuses. In some photographs, a man's hand is pulling aside the girl's underwear and touching her labia. Officers concluded that these contained depictions of minors based on the size of the girls and the lack of pubic hair or indication of any removal of pubic hair. Further, officers concluded that the subject of one of the photographs was one of Irwin's victims, based on a distinctive T-shirt.

On July 11, 2014, Irwin pleaded guilty under a fourth amended information to three counts of child molestation in the second degree and one count of possessing depictions of minors engaged in sexual conduct in the second degree. The trial court sentenced Irwin to 116 months on the child molestation charges and 60 months on the possession charge. Additionally, the court imposed four months of community custody based on the child molestation charges.

---

[1] Clerk's Papers (CP) at 105, 107.
[2] There appear to be four unique photographs, with several copies of some of the pictures.

2

Two of the community custody conditions were:

5. Do not frequent areas where minor children are known to congregate, as defined by the supervising [Community Corrections Officer (CCO)].[3]

. . . .

11. You may not possess or maintain access to a computer unless specifically authorized by CCO. You may not possess any computer parts or peripherals, including but not limited to hard drives, storage devices, digital cameras, web cams, wireless video devices or receivers, CD/DVD [(compact disc/digital video disc)] burners, or any device to store or reproduce digital media or images.[4]

Park's counsel objected to condition 5 because it was unconstitutionally vague and to condition 11 because it was not crime-related and was too broad. Trial counsel requested that, rather than leave the definition of condition 5 to the discretion of the CCO, the court should list prohibited places as examples. The trial court explained that that Irwin should not "frequent areas of high concentration of children, such as swimming pools and schools and things like that. Public restaurants would be all right."[5] The court, considering Irwin's arguments related to condition 11, struck the language about digital cameras, and added permission for Irwin to reside somewhere that contained a prohibited device. Regarding condition 11, the court added:

I think we just let the language ride. If we tried to micromanage that language, we'd have a document a hundred pages long, and if . . . [the Department of Corrections (DOC)] officer believes there's a violation, we'd just have to look at it circumstance by circumstance and see if it was.

. . . .

_____

[3] CP at 133.
[4] Report of Proceedings (RP) (8/7/2014) at 12.
[5] RP (8/7/2014) at 12.

> We've got to hope that they have the common sense that they can determine the wheat from the chaff.[6]

After these comments and changes, the final version of condition 11 read:

> 11. You may not possess or maintain access to a computer unless specifically authorized by CCO. You may not possess any computer parts or peripherals, including but not limited to hard drives, storage devices, or any device to store or reproduce digital media or images. Defendant may reside in a residence where a computer or other device capable of storing images is located.[7]

Irwin timely appeals.

## ANALYSIS

### Vagueness Challenge to Community Custody Condition Prohibiting Irwin from Frequenting Areas Where Minor Children Congregate

*Ripeness*

The State argues that the community custody condition requiring Irwin not to "frequent areas where minor children are known to congregate, as defined by the supervising CCO," is not ripe for review. Community custody conditions are ripe for review on direct appeal "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" State v. Bahl, 164 Wn.2d 739, 751, 193 P.3d 678 (2008) (quoting First United Methodist Church v. Hearing Exam'r, 129 Wn.2d 239, 255-56, 916 P.2d 374 (1996)). Courts should also consider the hardship to the parties if they are forced to wait. State v. Sanchez Valencia, 169 Wn.2d 782, 790, 239 P.3d 1059 (2010).

In State v. Sanchez Valencia, the court held that a preenforcement challenge to a community custody condition prohibiting the defendant from possessing "paraphernalia" was ripe under a four pronged test. 169 Wn.2d 782,

---

[6] RP (8/7/2014) at 15.
[7] CP at 134.

4

786-91, 239 P.3d 1059 (2010). First, it was a vagueness challenge, which is often a question of law because "time will not cure the problem." Sanchez Valencia, 169 Wn.2d at 788. Second, factual development would not make the issue more clear. Sanchez Valencia, 169 Wn.2d at 789. Unlike conditions that impose financial obligations on defendants or require released defendants to submit to searches (where the questions would be, whether the defendant was indigent and whether the search valid), the question in that case would always be whether "the condition as written provide[d] constitutional notice and protection against arbitrary enforcement." Sanchez Valencia, 169 Wn.2d at 789. The court rejected the State's argument that the question required factual development because the CCOs had to decide how to impose the conditions. Sanchez Valencia, 169 Wn.2d at 789 n.2. The court "is responsible for imposing the condition" not the CCO. Sanchez Valencia, 169 Wn.2d at 789 n.2. Third, the action was final because the defendants were sentenced. Sanchez Valencia, 169 Wn.2d at 789. Lastly, the defendants would suffer hardship if the court declined "to review their challenge on direct appeal" because the conditions would apply to the defendants immediately upon release. Sanchez Valencia, 169 Wn.2d at 789-90.

Here, the preenforcement challenge is ripe because Irwin is situated exactly like the defendants in Sanchez Valencia. First, the challenge raises a purely legal question: whether the challenged community custody condition provides him with constitutionally required notice and would protect against arbitrary enforcement. Second, the challenge does not require factual

5

development. The State, like it did in <u>Sanchez Valencia</u>, argues that the condition is factually dependent because the CCO still has to specify restricted locations. <u>See</u> 169 Wn.2d at 789 n.2. But the sentencing court, not the CCO must impose the condition. <u>See</u> <u>Sanchez Valencia</u>, 169 Wn.2d at 789 n.2. Third, the court sentenced Irwin with this condition. Lastly, this condition will attach to Irwin immediately upon release. Just like the defendants in <u>Sanchez Valencia</u>, Irwin would suffer significant hardship if the court refused to review this condition on direct appeal.[8] <u>See</u> 169 Wn.2d at 789.

*Vagueness*

Irwin argues that the following community custody condition is unconstitutionally vague: "Do not frequent areas where minor children are known to congregate, as defined by the supervising CCO."[9]

This court reviews community custody conditions for abuse of discretion, and will reverse them only if they are "manifestly unreasonable." <u>Sanchez Valencia</u>, 169 Wn.2d at 791-92. Imposing an unconstitutional condition will always be "manifestly unreasonable." <u>Sanchez Valencia</u>, 169 Wn.2d at 791-92. This court does not presume that community custody conditions are constitutional. <u>Sanchez Valencia</u>, 169 Wn.2d at 793.

---

[8] Further, the Washington State Supreme Court held that a defendant's violation of the exact same condition challenged here did not have to be willful. <u>State v. McCormick</u>, 166 Wn.2d 689, 213 P.3d 32 (2008). Irwin would suffer "significant hardship" if he did not know until after enforcement whether his actions would violate this condition. <u>Sanchez-Valencia</u>, 169 Wn.2d at 789.

[9] CP at 117.

6

The guarantee of due process, contained in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, requires that laws not be vague. Bahl, 164 Wn.2d at 752-53. The laws must (1) provide ordinary people fair warning of proscribed conduct, and (2) have standards that are definite enough to "'protect against arbitrary enforcement.'" Bahl, 164 Wn.2d at 752-53 (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). A community custody condition is unconstitutionally vague if it fails to do either. Bahl, 164 Wn.2d at 753. However, "'a community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" Sanchez Valencia, 169 Wn.2d at 793 (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009)).

In Sanchez Valencia, the court held that the following condition was unconstitutionally vague:

> "Defendant shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, police scanners, and hand held electronic scheduling and data storage devices."

169 Wn.2d at 785. It was significant to the court that the condition did not specify that it prohibited only "drug" paraphernalia and that a CCO could find a violation for possession of common household items, including "sandwich bags or paper." Sanchez Valencia, 169 Wn.2d at 794-95. As the concurrence pointed out, the condition could likely be saved by adding the word "drug" in front of

"paraphernalia." Sanchez Valencia, 169 Wn.2d at 795 (J.M. Johnson, J., concurring).

The court in State v. Riles upheld the constitutionality of a community custody condition almost identical to the one in this case. 135 Wn.2d 326, 349, 957 P.2d 655 (1998), abrogated by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010). There, the challenged condition prohibited the defendant from "frequent[ing] places where minors are known to congregate without specific permission of sexual deviancy counselor or supervising CCO." Riles, 135 Wn.2d at 333-34 (emphasis omitted). The court upheld that condition but it did so under a standard of review that the court later disapproved in Sanchez Valencia. Riles, 135 Wn.2d at 349; see Sanchez Valencia, 169 Wn.2d at 792.

In both Bahl and State v. Sansone, 127 Wn. App. 630, 638, 111 P.3d 1251 (2005), courts held that community custody conditions that required further definition from CCOs were unconstitutionally vague. Both cases addressed conditions requiring definitions of "pornography," a word that has defied definition in federal courts. Bahl, 164 Wn.2d at 754-55, 758. In Bahl, the court held that the fact that a CCO could "direct what falls within the condition only ma[de] the vagueness problem more apparent, since it virtually acknowledge[d] that on its face it d[id] not provide ascertainable standards for enforcement." 164 Wn. 2d at 758. In Sansone, the court held that "pornography" was unconstitutionally vague in that context. 127 Wn. App. at 638. That the condition explicitly required that CCOs define pornography underscored the inherent vagueness of the term. Sansone, 127 Wn. App. at 639. Further, it made it more likely that the condition

could be arbitrarily enforced, which would render it vague under the second prong of the test. Sansone, 127 Wn. App. at 639.

While Bahl and Sansone involved the intractably undefinable term "pornography," this case simply requires ordinary people to understand where "children are known to congregate."[10] But, as Irwin points out, whether that would include "public parks, bowling alleys, shopping malls, theaters, churches, hiking trails" and other public places where there may be children is not immediately clear.[11] Trial counsel requested that, rather than leave the definition of this condition to the discretion of the CCO, the court should list prohibited places as examples. When presented with this argument at sentencing, the trial court explained that that Irwin should not "frequent areas of high concentration of children."[12] But, the final condition did not include that clarification.

Without some clarifying language or an illustrative list of prohibited locations (as suggested by trial counsel), the condition does not give ordinary people sufficient notice to "understand what conduct is proscribed." See Bahl, 164 Wn.2d at 753. This conflicts with the holding in Riles, but, at that time, the condition was given a presumption of constitutionality. 135 Wn.2d at 349. That presumption no longer applies. See Sanchez Valencia, 169 Wn.2d at 792. If ordinary people cannot understand what conduct is proscribed, the statute is unconstitutionally vague. Bahl, 164 Wn.2d at 753. If a statute is unconstitutionally vague, it is manifestly unreasonable, and therefore an abuse of discretion. Sanchez Valencia, 169 Wn.2d at 791-92.

---

[10] CP at 117.
[11] Appellant's Br. at 8.
[12] RP (8/7/2014) at 12.

It may be true that, once the CCO sets locations where "children are known to congregate" for Irwin, Irwin will have sufficient notice of what conduct is proscribed.[13] But, although that would help the condition satisfy the first prong of the vagueness analysis, it would leave the condition vulnerable to arbitrary enforcement. See Bahl, 164 Wn.2d at 753; Sansone, 127 Wn. App. at 639. The potential for arbitrary enforcement would render the condition unconstitutional under the second prong of the vagueness analysis. See Bahl, 164 Wn.2d at 753. Therefore, this court reverses the trial court, strikes the condition as being void for vagueness, and remands to the trial court for resentencing.

### Crime-Related Challenge to Condition Prohibiting Irwin from Possessing a Computer or Any Digital Media Storage Device

Irwin argues that it was error for the trial court to impose a technology-related community custody condition based on Irwin's molestation convictions. Because Irwin's molestation of his victims included taking photographs (which he stored on his computer), the community custody condition was crime-related and was not an abuse of discretion.

Trial courts may impose crime-related prohibitions while a defendant is in community custody. RCW 9.94A.505(8), 703(3)(f). A "'[c]rime-related prohibition' . . . prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "Directly related" includes conditions that are "reasonably related" to the crime. State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870, review denied, 337 P.3d 325 (2014).

---

[13] CP at 117.

10

This court reviews a trial court's imposition of crime-related community custody conditions for abuse of discretion. State v. Cordero, 170 Wn. App. 351, 373, 248 P.3d 773 (2012). A sentencing court abuses its discretion if its decision is manifestly unreasonable or if exercised on untenable grounds or for untenable reasons. State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). This court reviews the factual bases for crime-related conditions under a "substantial evidence" standard. State v. Motter, 139 Wn. App. 797, 801, 162 P.3d 1190 (2007), disapproved of by Sanchez Valencia, 169 Wn.2d 782; see also State v. Brockob, 159 Wn.2d 311, 343, 150 P.3d 59 (2006) (holding than an "appellate court reviews whether substantial evidence supports the trial court's findings of fact").

The court has struck crime-related community custody conditions when there is "no evidence" in the record that the circumstances of the crime related to the community custody condition. See State v. Zimmer, 146 Wn. App. 405, 413, 190 P.3d 121 (2008) (reversing condition that defendant not have a cell phone after finding "no evidence in the record" that defendant used cell phones to facilitate drug possession or distribution); State v. O'Cain, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008) (striking condition that prohibited defendant's Internet use after finding "no evidence that [the defendant] accessed the Internet before the rape or that Internet use contributed in any way to the crime"); State v. Johnson, 180 Wn. App. 318, 330-31, 327 P.3d 704 (2014) (striking Internet related community custody condition because "there [were] no findings

suggesting any nexus between [the defendant's] offense and any computer use or Internet use").

Conversely, this court has upheld crime-related community custody decisions when there is some basis for the connection. In State v. Kinzle, the court upheld a condition prohibiting the defendant from dating women with minor children or forming relationships with families who have minor children because the defendant's victims in that case were "children with whom he came into contact through a social relationship with their parents." 181 Wn. App. 774, 785, 326 P.3d 870 (2014). In that case, the defendant had molested the children of a platonic male friend, but there was no allegation that he had molested the children of any women he had been romantically involved with. Kinzle, 181 Wn. App. at 777. In Riley, the court upheld a condition prohibiting a defendant convicted of "computer trespass" from having a computer. 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). There, the defendant conceded that he should not be allowed to have a modem, but argued that, because he "[could] not commit computer trespass without a modem" a condition prohibiting him from having a computer was not crime-related. Riley, 121 Wn.2d at 37.

Here, the challenged condition, in its final version, read:

> 11. You may not possess or maintain access to a computer unless specifically authorized by CCO. You may not possess any computer parts or peripherals, including but not limited to hard drives, storage devices, or any device to store or reproduce digital media or images. Defendant may reside in a residence where a computer or other device capable of storing images is located.[14]

---

[14] CP at 134.

The court struck language that would have prohibited Irwin from having a digital camera and added the last sentence, allowing Irwin to reside somewhere with the prohibited technology.

Irwin argues that the technology condition is related to his possessing depictions of minors engaged in sexually explicit conduct charge, but is not related to his child molestation charges. The court imposed community conditions only for child molestation in the second degree, counts I, II, and III. Therefore, the community custody conditions must be reasonably related to the child molestation charges, not the possessing depictions of minors engaged in sexually explicit conduct in the second degree charge.

This is not a case where no evidence connects the crime and the community custody condition. Unlike in State v. O'Cain, here, there is evidence in the record that technology contributed to Irwin's crime. 144 Wn. App. 772, 775, 184 P.3d 1262 (2008). The presentence investigation contains evidence that Irwin took and stored pornographic images as part of his act of molesting underage females. Officers found ten pictures of minors engaged in sexually explicit conduct on Irwin's computer that were taken with the same kind of camera Irwin owned. One of those photographs depicted a man's hand touching the labia of one of Irwin's victims. The officers concluded that "[i]t appears based upon the evidence that the child pornography images described above were self-produced by Samuel Irwin."[15] Irwin contends that the photographs do not form the basis for his convictions for child molestation because the convictions were based on incidents as described by the underage females. This argument is

_____

[15] CP at 111.

13

unconvincing. The guilty plea for each count of child molestation refers to neither the girls' accounts of the incidents nor the photographs. But it does provide a date range for the acts, June 1, 2013 through September 15, 2013. The photographs were all taken on either August 2, 2013 or September 15, 2013. The photographs could easily have been part of the basis for conviction if the case had gone to trial.

The relationship between Irwin's crime and this technology community custody condition is at least as strong as the connection between Kinzle's crime and the condition that he not form romantic relationships with women with minor children. See Kinzle, 181 Wn. App. at 777, 785. Irwin actually took and stored photographs of himself molesting some of his victims; Kinzle had no romantic relationship with the mother of the girls he molested. Kinzle, 181 Wn. App. at 777. Irwin's crimes were at least "reasonably related" to the community custody condition imposed by the trial court. See Kinzle, 181 Wn. App. at 785.

Irwin argues that, even if this court finds that the condition is crime-related, it should narrow the condition by removing the language "any device to store or reproduce digital media or images."[16] Irwin does not point to any authority that suggests that a crime-related condition is too broad. While it is true that this condition will make it virtually impossible for Irwin to possess a cell phone after release, this court cannot say that it was an abuse of discretion to retain that language. This court affirms the trial court's imposition of this condition.

---

[16] Appellant's Br. at 15.

Statement of Additional Grounds for Review

Irwin raises seven additional grounds for review. None of them require reversal on direct appeal.[17] Several of Irwin's arguments refer to material outside the record on appeal. This court will not consider grounds for review that rely on evidence not in the record. See RAP 10.10(c). Irwin's recourse in this case is to bring a properly supported personal restraint petition. See RAP 16.4. Those grounds were (1) that he was denied his speedy trial rights, (2) that he was prejudiced by the court's denial of his motion for a new attorney, and (5) that he received ineffective assistance of counsel.

Irwin's fourth ground for review is that there was insufficient evidence to convict him on count IV. When defendants plead guilty, they waive their right to contest the sufficiency of the State's proof against them. State v. Carrier, 36 Wn. App. 755, 757, 677 P.2d 768 (1984). Irwin pleaded guilty to count IV. Therefore, he waived his right to challenge the sufficiency of the State's evidence on this count. See Carrier, 36 Wn. App. at 757.

Irwin's sixth ground for review is that he was prejudiced by being arrested at home before the State issued a warrant for his arrest. He does not allege any specific prejudice from this arrest (such as items being discovered incident to an unconstitutional arrest). The record suggests that all incriminating items were discovered pursuant to a valid search warrant, obtained after Irwin's arrest.

Seventh, Irwin argues that he was prejudiced by the State repeatedly amending the information against him. Washington's court rules state that "[t]he

---

[17] Irwin crossed out his third additional ground, so the grounds are numbered 1, 2, 4, 5, 6, 7, and 8. For ease of reference, this opinion refers to the arguments by their designated number, even though there is no "third" ground.

court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." CrR 2.1(d). It is not error for the court to allow repeated amendments unless the defendant can show prejudice. State v. Collins, 45 Wn. App. 541, 551, 726 P.2d 491 (1986). Irwin has not alleged any prejudice beyond the fact that the amendments were allowed. Therefore, the court will not reverse on this ground. See Collins, 45 Wn. App. at 551.

Eighth, Irwin argues that his warrant of commitment and judgment and sentence were not signed properly. The judge's or court commissioner's signature on the sentence is illegible and his or her name is not printed beneath, but it can reasonably be interpreted as Michael Rickert. The warrant of commitment contains Judge Rickert's stamp, rather than a signature. Irwin does not indicate any prejudice resulting from these authorizations or point to any authority that indicates this is error.

We affirm the community custody conviction related to technology, and reverse the community custody condition prohibiting Irwin from frequenting areas where children are known to congregate, as defined by the supervising CCO.

Trickey, J.

WE CONCUR:

Spearman, C.J.                    Leach, J.