# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74310-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMEEL L. PADILLA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 24, 2017 |

SPEARMAN, J. — Jameel Padilla was convicted of two counts of viewing depictions of a minor engaged in sexually explicit conduct in the first degree and two counts of the same offense in the second degree. On appeal, he contends that his convictions must be reversed because the charging document and the to convict jury instruction omitted an essential implied element of the charged crimes. Padilla also asserts that the community custody condition imposed by the trial court prohibiting him from frequenting places where minors congregate is unconstitutionally vague. We accept the State's concession of error as to the challenged community custody condition, but conclude that Padilla's remaining arguments are without merit. We remand to strike the unlawful condition, but otherwise affirm the judgment and sentence.

No. 74310-4-I/2

## FACTS

In April 2012, a mother and father reported to the Arroya Grande Police Department that an unknown individual had sent sexually explicit messages to their nine-year-old daughter on Facebook. The detectives were informed that the individual used the profile name "Jim Wilcox." While the detectives were investigating the complaint, they discovered that the Internet Protocol Address for the computer used to access the Facebook account was associated with Jameel Padilla of Everett, Washington.

In September 2012, Everett Police executed a search warrant at Padilla's home. They seized a laptop computer from the home. A forensic examination of the computer revealed approximately one hundred sexually explicit photos of young girls in the unallocated space[1] in the computer's memory. It revealed videos of infants and children engaged in sexually explicit conduct. The examination also revealed internet search queries that Padilla initiated including: "child porn Frostwire;"[2] "What makes you a pedophile?;" "Eleven year old raped by 20 men;" "Little girl sucking;" and "How to delete stuff from an unallocated space." Verbatim Report of Proceedings (VRP) (09/22/15) at 128-29. Additionally, the examination revealed chat communications where the user was seeking content of children engaged in sexually explicit conduct.

---

[1] Data in unallocated space is data that has been deleted but continues to exist until it is overwritten.

[2] FrostWire is a peer-to-peer file sharing program.

2

Padilla was charged with two counts of viewing depictions of a minor engaged in sexually explicit conduct in the first degree, and two counts of the same offense in the second degree.[3] The charging document alleged that Padilla intentionally viewed over the internet pictures of minors engaged in sexually explicit conduct.[4] The jury instructions for these counts mirrored this language.[5]

---

[3] Padilla was also charged with one count of communication with a minor for immoral purposes via electronic communication which was severed from the other charges and tried separately.

[4] The charging document alleged as follows:

That the defendant . . . did intentionally view over the internet, in an internet session . . . visual or printed matter that depicted a minor engaged in [sexually explicit conduct (first degree) or display of unclothed genitals or female breasts (second degree)] . . . .

Clerk's Papers (CP) at 104-05.

[5] The to convict instruction for the first viewing count explained that:

To convict the defendant of the crime of Viewing Depictions of a Minor Engaged in Sexually Explicit Conduct in the First Degree as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 1st day of January 2011 through the 12th day of September, 2012, in an internet session separate and distinct from that alleged in Counts II, III, and IV, the defendant intentionally viewed over the internet visual or printed matter depicting a minor engaged in sexually explicit conduct;

(2) That the viewing was initiated by the defendant; and

(3) That the viewing of the visual or printed material occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 86. The remaining counts were charged similarly, with different definitions of sexually explicit conduct given for the first and second degree charges.

The charging document did not specifically allege, nor did the jury instructions expressly require the State to prove, that Padilla knew he was viewing minors. Padilla did not object to the information or jury instructions on this, or any other, basis. The jury convicted him on all four counts.

The sentencing court imposed several conditions of community custody including prohibiting Padilla from frequenting areas where minor children are known to congregate. Padilla appeals.

## DISCUSSION

Padilla makes three assignments of error on appeal. The first two concern whether we should read into the statute defining the crime of viewing depictions of a minor engaged in sexually explicit conduct (the viewing statute) an additional element of knowledge that the person depicted is a minor. Padilla claims that such knowledge is an essential element of the crime and that the charging document and the to-convict instructions given in this case were deficient because of its omission. Padilla's third claim challenges a community custody condition as unconstitutionally vague. We first decide whether Padilla is correct that a defendant's knowledge that the person viewed is a minor is an essential element of the charged crimes.

Padilla rests his argument in large part on our decision in State v. Rosul, 95 Wn. App. 175, 974 P.2d 916 (1999). In Rosul, we considered the statute criminalizing the possession of child pornography (the possession statute). The statute provided, in relevant part, that a person is guilty of possessing child pornography when that person "knowingly possesses visual or printed matter

depicting a minor engaged in sexually explicit conduct . . . ." Id. at 180; RCW 9.68A.070. We concluded the statute was impermissibly overbroad because, for example, a person delivering a package containing child pornography could knowingly possess the package and yet be unaware of its contents. Id. at 182. Thus, applying the statute as written, a person engaged in "clearly innocent conduct" could be in violation of it. Id. at 183. Accordingly, we construed the statute to require "a showing that the defendant was aware not only of possession, but also of the general nature of the material he or she possessed." Id. at 185.

Padilla argues that the possession statute and the viewing statute are similar and that, as with the possession statute, in order to save the viewing statute from being impermissibly overbroad, we must imply an element of knowledge that the person depicted was a minor. But, as we observed in Rosul, a statute is only impermissibly overbroad if it "will significantly compromise recognized First Amendment protections of persons not before the court." Id. at 182 (citing Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)). To support his claim that the viewing statute is substantially overbroad, Padilla must "demonstrate from the text of [the challenged law] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally." New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988). He fails to carry this burden.

5

The viewing statute states, in relevant part:

(1) A person who intentionally views over the internet visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e) is guilty of viewing depictions of a minor engaged in sexually explicit conduct in the first degree . . . .

(2) A person who intentionally views over the internet visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (f) or (g) is guilty of viewing depictions of a minor engaged in sexually explicit conduct in the second degree . . . .

(3) . . . The state must prove beyond a reasonable doubt that the viewing was initiated by the user of the computer where the viewing occurred.

RCW 9.68A.075.[6] Thus, in order to sustain a conviction, this statute requires the prosecution to prove that a defendant: (1) intentionally viewed visual or printed material over the internet; (2) that the material viewed depicted a minor engaged in sexually explicit conduct; and (3) that the viewing was initiated by the defendant.

---

[6] Subsections (1) and (2) refer to RCW 9.68A.011(4) which reads as follows:

(4) "Sexually explicit conduct" means actual or simulated:
    (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
    (b) Penetration of the vagina or rectum by any object;
    (c) Masturbation;
    (d) Sadomasochistic abuse;
    (e) Defecation or urination for the purpose of sexual stimulation of the viewer;
    (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and
    (g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

Under a plain reading of the statute's language, we cannot see how the statute impermissibly jeopardizes First Amendment protections. Nor does Padilla explain how the statute criminalizes innocent conduct when it only reaches individuals who initiate an internet session intending to view material that depicts a minor engaged in explicit sexual conduct and who, then, in fact, view the very material sought. Unlike the possession statute, the viewing statute presents no identifiable risk of sweeping within its prohibitions innocent persons engaged in constitutionally protected activities.

We conclude that Padilla has not shown that the statute is impermissibly overbroad and reject his argument that we must imply an additional knowledge element to the viewing statute. And because his claims that the charging document and the to convict instructions are deficient hinge on the success of his overbreadth argument, they also fail. We affirm Padilla's convictions.

Padilla challenges the community custody condition prohibiting him from frequenting areas where minor children are known to congregate because it is unconstitutionally vague. The State concedes, and we agree, that the community custody condition is void for vagueness and should be stricken. In Irwin, we found that an identical prohibition was an unconstitutionally vague community custody condition. State v. Irwin, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015). We therefore remand to the sentencing court with instructions to strike the vague condition.

Padilla also asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2.

However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, Padilla was found indigent by the trial court. If the State has evidence indicating that Padilla's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Remanded to strike the unlawful condition but otherwise affirmed.

WE CONCUR:

_Spearman, J._

_Trickey, ACJ_

_Mann, J._