-FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 AUG -6 AM 10: 41

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 76456-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MATTHEW JOSEPH METCALF, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 6, 2018 |

TRICKEY, J. — Matthew Metcalf pleaded guilty to four counts of second degree child molestation. The trial court imposed community custody conditions that in part prohibited Metcalf from possessing or viewing pornography or sexually explicit material; entering into any dating, romantic, or sexual relationships without the express written approval of his community corrections officer (CCO); and entering into any dating, romantic, sexual, or friend relationships with adults with minor children without the express written approval of his CCO. Because the terms "pornography" and "romantic" are unconstitutionally vague in the context of Metcalf's community custody conditions, we reverse in part and remand. We otherwise affirm.

## FACTS

Metcalf pleaded guilty to four counts of second degree child molestation. The victims were not related to him.

In Metcalf's judgment and sentence, the trial court imposed several community custody conditions. The conditions included:

> 6. Do not possess or view any pornography or sexually explicit material.
> 7. Do not enter into any dating, romantic, or sexual relationships without the express written approval of your [CCO].
> 8. Do not enter into any dating, romantic, sexual, or friend relationships with people who have minor children without the express written approval of your [CCO].[1]

Metcalf appeals.

## ANALYSIS

### Unconstitutional Vagueness

Metcalf argues that the trial court abused its discretion when it imposed community custody conditions containing unconstitutionally vague terms. We examine each of the challenged terms in turn.

"[T]he due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct." State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). Thus, laws must both "'(1) provide ordinary people fair warning of proscribed conduct and (2) have standards that are definite enough to 'protect against arbitrary enforcement.'" State v. Irwin, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015) (internal quotation marks omitted) (quoting Bahl, 164 Wn.2d at 752-53).

When determining whether challenged language is sufficiently definite to provide fair warning, the reviewing court must read the language in context and

---

[1] Clerk's Papers (CP) at 41.

2

give it a "sensible, meaningful, and practical interpretation." City of Spokane v. Douglass, 115 Wn.2d 171, 180, 795 P.2d 693 (1990). If a term is undefined, "the court may consider the plain and ordinary meaning as set forth in a standard dictionary." Bahl, 164 Wn.2d at 754.

"'[A] community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010) (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009)). Rather, a community custody condition is sufficiently definite if persons of ordinary intelligence would understand what behavior is proscribed. Douglass, 115 Wn.2d at 179.

"This court reviews community custody conditions for abuse of discretion." Irwin, 191 Wn. App. at 652. "Imposing an unconstitutional condition will always be 'manifestly unreasonable.'" Irwin, 191 Wn. App. at 652 (quoting Sanchez Valencia, 169 Wn.2d at 792).

*Pornography*

Metcalf argues that the trial court abused its discretion when it imposed a community custody condition prohibiting him from possessing or viewing "pornography."[2] Community custody conditions that restrict "accessing or possessing pornographic materials" are unconstitutionally vague. Bahl, 164 Wn.2d at 758. Therefore, we conclude that the trial court abused its discretion,

---

[2] CP at 41.

and remand for the trial court to strike the term from the community custody condition.

*Sexually Explicit Material*

Metcalf argues that the trial court abused its discretion when it imposed a community custody condition prohibiting him from possessing or viewing "sexually explicit material" because the term "sexually explicit material" is unconstitutionally vague.[3] We disagree.

Community custody conditions that implicate material protected under the First Amendment are held to a stricter standard of definiteness to avoid a chilling effect on the exercise of First Amendment rights. Bahl, 164 Wn.2d at 753.

The dictionary definition of "explicit" is "characterized by full clear expression : being without vagueness or ambiguity . . . UNEQUIVOCAL." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 801 (2002).

In Bahl, the Washington Supreme Court upheld a community custody condition that prohibited the defendant from frequenting "'establishments whose primary business pertains to sexually explicit or erotic material.'" 164 Wn.2d at 758. The court relied on the dictionary definition of "explicit" to conclude that the term "sexually explicit" was not unconstitutionally vague in the context of the community custody condition. Bahl, 164 Wn.2d at 758-60. The court also looked to the statutory definition of "sexually explicit material" under RCW 9.68.130(2)[4] to

---

[3] CP at 41.
[4] RCW 9.68.130(2) defines "sexually explicit material" as
  any pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works

support its conclusion, although it noted that the defendant was not convicted under the statute. Bahl, 164 Wn.2d at 759-60.

Here, the community custody condition imposed on Metcalf prohibited him from possessing or viewing sexually explicit material. Under the reasoning in Bahl, the dictionary definition of "explicit" renders the term "sexually explicit material" not unconstitutionally vague, as it applies only to material that is unequivocally sexual in nature. Thus, it sufficiently warns Metcalf of what material is within the scope of the community custody condition, and prevents arbitrary enforcement of the condition by his CCO. But on remand, the trial court may consider adding additional language or statutory references to provide further clarification of what material is prohibited.

*Romantic Relationships*

Metcalf argues that the trial court abused its discretion when it imposed community custody conditions prohibiting him from entering into "romantic" relationships without the consent of his CCO because the term is unconstitutionally vague.[5] We agree.[6]

The dictionary definition of "romantic" is, in relevant part, "consisting of or similar in form or content to a romance . . . : having an inclination or desire for

---

of art or of anthropological significance shall not be deemed to be within the foregoing definition.

[5] CP at 41.

[6] Metcalf also argues that the term "dating" is unconstitutionally vague in the heading of the relevant section of his opening brief. Appellant's Opening Br. at 12. But he does not provide substantive argument in support of this contention. See Appellant's Opening Br. at 12; see also Appellant's Reply Br. at 9-10 (reference to "dating" without substantive argument that it is unconstitutionally vague). Because Metcalf has not provided substantive argument in support of his claim, we decline to address this issue. RAP 10.3(a)(6).

romance . . . : characterized by a strong personal sentiment, highly individualized feelings of affection, or the idealization of the beloved or the love relationship." WEBSTER'S, supra, at 1970.

The dictionary definition of the related term "romance" is, in relevant part, "the quality or state of being romantic . . . : a love, love affair, or marriage of a romantic nature . . . : LOVEMAKING . . . : an attraction or aspiration of an emotional or romantic character . . . : to seek the favor or influence of by personal attention, flattery, or gifts." WEBSTER'S, supra, at 1969-70 (internal footnotes omitted).

Here, based on the dictionary definitions of "romantic" and the related term "romance," a romantic relationship includes heightened feelings of affection toward an individual, rising to the level of love. Such feelings are inherently unique to an individual, making the existence of a romantic relationship highly subjective. Given this subjectivity, the dictionary definitions of "romantic" and the related term "romance" fail to provide ordinary people with fair warning of the conduct proscribed by the community custody conditions. Further, relying on the outside perspective of Metcalf's CCO to determine whether Metcalf is exhibiting such subjective emotions does not protect him from arbitrary enforcement of the conditions.

Therefore, we conclude that the trial court abused its discretion when it imposed the community custody conditions because the term "romantic" is unconstitutionally vague. On remand, the trial court should strike the term "romantic" from the conditions in which it appears.

6

*Friend Relationships*

Metcalf argues that the trial court abused its discretion when it imposed a community custody condition prohibiting him from entering into "friend" relationships with people who have minor children without the consent of his CCO. Because the dictionary definition of "friend" provides sufficient guidance about what types of relationships are within the scope of the condition, we disagree.

The dictionary definition of "friend" is, in relevant part,

> one that seeks the society or welfare of another whom he holds in affection, respect, or esteem or whose companionship and personality are pleasurable : an intimate associate esp. when other than a lover or relative . . . : one not hostile or not an enemy . . . : a favored date : a boyfriend or girlfriend. . . .
>
> . . . FRIEND applies to a person one has regarded with liking and a degree of respect and has known for a time in a pleasurable relationship neither notably intimate nor dependent wholly on business or professional ties.

WEBSTER'S, supra, at 911.

Here, the dictionary definition of "friend" applies to relationships Metcalf seeks because he enjoys the company of another, or because he holds an individual in some "affection, respect, or esteem." WEBSTER'S, supra, at 911. It specifically excludes relationships that are notably intimate or are developed through business or professional ties. The broad scope of the dictionary definition of "friend," along with its specific exclusions, is sufficient to notify Metcalf of when he must seek his CCO's approval prior to entering certain relationships and prevents arbitrary enforcement of the condition by his CCO. Therefore, we conclude that the term "friend" is not unconstitutionally vague in the context of the

community custody condition requiring Metcalf to obtain the permission of his CCO prior to entering into "friend" relationships with adults who have minor children.

In sum, we agree with Metcalf that the trial court abused its discretion when it imposed community custody conditions containing unconstitutionally vague terms. Therefore, on remand, the trial court should strike the terms "pornography" and "romantic" where relevant. We also conclude that although the term "sexually explicit material" is not unconstitutionally vague, the trial court may add additional language or statutory citations to clarify the scope of the term on remand. We affirm the trial court's imposition of the community custody condition requiring Metcalf to obtain the permission of his CCO prior to entering into "friend" relationships with adults who have minor children.

## Infringement of Constitutional Rights

Metcalf argues that the trial court interfered with his constitutional rights to parent and to marry when it did not exempt his wife and children from the community custody condition prohibiting him from entering into various relationships with people who have minor children without the consent of his CCO. Because Metcalf failed to object to the community custody condition on this ground below and has not shown on appeal that any error was manifest, we decline to reach the merits of this issue.

"The rights to marriage and to the care, custody, and companionship of one's children are fundamental constitutional rights." State v. Warren, 165 Wn.2d 17, 34; 195 P.3d 940 (2008).

An appellant may raise a claim of "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). "[T]he appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (second alteration in original) (quoting State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)). "To demonstrate actual prejudice, there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" O'Hara, 167 Wn.2d at 99 (alteration in original) (quoting Kirkman, 159 Wn.2d at 935).

Here, Metcalf did not object to the imposition of the community custody condition prohibiting him from entering various relationships with people who have minor children on the ground that it interfered with his constitutional rights. Therefore, on appeal, he bears the burden of both identifying a constitutional right that was infringed and establishing that the error was manifest.

Metcalf has identified his constitutional rights to parent and to marry, and thus has likely satisfied the first prong of his burden. But he has not argued on appeal that the error was manifest. Rather, his arguments focus exclusively on the existence of the constitutional rights he asserts. Because Metcalf has not carried his burden of establishing that the claimed constitutional error was manifest, we decline to review his argument on appeal under RAP 2.5.

Affirmed in part, reversed in part, and remanded.

Trickey, J

WE CONCUR:

Appelwick, CJ          Becker, J.