IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76676-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRIAN T. STARK, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: October 15, 2018 |

ANDRUS, J. — In 2010, Brian T. Stark was convicted of four domestic violence sex offenses: attempted first-degree child molestation, first-degree child molestation, first-degree incest, and third-degree child molestation. His convictions were affirmed on direct appeal in 2013. In 2016, this court granted Stark's personal restraint petition and vacated the first count as time barred. Stark was resentenced in 2017. He now appeals seven conditions of community custody imposed on resentencing, arguing that these conditions are not crime related or are unconstitutionally vague. We affirm in part, reverse in part, and remand.

## FACTS

Stark dated a woman, Danelle, who had a young daughter, C.W.[1] Stark and Danelle later married and had a son. Stark abused C.W. for several years, beginning when she was in first grade. The abuse was disclosed to law enforcement when C.W. was in high school. The State charged Stark with four domestic violence sex offenses: attempted first-degree child molestation, first-degree child molestation, first-degree incest, and third-degree child molestation. A jury found Stark guilty as charged, and this court affirmed.

In a personal restraint petition, Stark argued that count one, which was based on the incident when C.W. was in first grade, was time barred. The State conceded the error. This court vacated Stark's conviction for attempted first-degree child molestation and remanded for resentencing. At resentencing, the court imposed an indeterminate sentence with a minimum term of 125 months on the first degree child molestation conviction, count 2, and standard range sentences of 61 months and 54 months on counts 3 (incest) and 4 (third degree child molestation), respectively. The sentencing court also imposed several conditions of community custody. Stark challenges seven of these conditions

## ANALYSIS

### Crime related challenges

A sentencing court may impose conditions of community custody, including prohibitions on "conduct that directly relates to the circumstances of the crime for

---

[1] This court considered the facts underlying Stark's convictions in In re Pers. Restraint Petition of Stark, 196 Wn. App. 1030 (Wash. Ct. App. Oct. 17, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/735802.pdf, and State v. Stark, noted at 172 Wn. App. 1041, slip op. at 1 (2013).

which the offender has been convicted." RCW 9.94A.030(1); RCW 9.94A.703(3). Because the imposition of crime-related prohibitions is necessarily fact-specific and based on the sentencing judge's in-person appraisal of the trial and offender, the appropriate standard of review is abuse of discretion. State v. Norris, 1 Wn. App. 2d 87, 97, 404 P.3d 83 (2017). The State need not establish that the prohibited conduct directly contributed to the offense. State v. Nguyen, No. 94883-6, slip op. at 13 (Wash. Sept. 13, 2018).[2] "So long as it is reasonable to conclude that there is a sufficient connection between the prohibition and the crime of conviction, we will not disturb the sentencing court's community custody conditions." Id. at 13-14.

In Nguyen, the Supreme Court upheld a prohibition on accessing sexually explicit material as reasonably related to the crimes of child rape and molestation. Id. at 16. The Nguyen court held that by committing sex crimes, the defendant established his inability to control sexual urges. Id. at 14. It was thus reasonable to prohibit the offender, Nguyen, from accessing materials whose only purpose was to stimulate sexual urges. Id. In considering conditions imposed on a separate offender, Norris, the Nguyen court upheld a prohibition on entering sex-related businesses as reasonably related to the crime of rape of child. Id. at 15-16. Although there was no evidence that sex-related businesses played a role in the offender's crime, the court held that the condition was related to Norris's inability to control her sexual urges. Id.

---

[2] http://www.courts.wa.gov/opinions/pdf/948836.pdf

Stark first challenges Condition 5, which concerns sexual contact. The condition requires Stark to:

Inform the supervising CCO [Community Corrections Officer] and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider and/or CCO approves of such, with the exception that sexual contact with the defendant's wife, Danelle Stark, is permitted.

Stark argues the prohibition on "[s]exual contact in a relationship" without prior approval of a CCO or treatment provider is not crime related. The State concedes that the prohibition is not related to Stark's crime. We accept the State's concession and remand for the sentencing court to strike the prohibition.

Stark also challenges as not crime related the portion of Condition 5 requiring him to disclose his sex offender status prior to any sexual contact. This challenge, however, is based on Stark's constitutional right to privacy, not on the statutory "crime related" requirement, which applies to prohibitions. See RCW 9.94A.703(3). We address the challenge below.

Stark next challenges Condition 9, which prohibits him from entering sex-related businesses, and Condition 10, which prohibits him from accessing sexually explicit material. At oral argument, Stark relied on State v. Padilla, 190 Wn.2d 672, 683, 416 P.3d 712 (2018), to argue that there must be evidence in the record linking the prohibition to the circumstances of the crime. Because there is no evidence that Stark frequented sex-related businesses or viewed sexually explicit materials, he argues that Conditions 9 and 10 are not crime related. The State's position is that Padilla is distinguishable on its facts, as the defendant in that case was convicted of communication with a minor for immoral purposes, not child rape

or molestation. The State argues that Stark's offenses involved the inability to control sexual urges, urges which are stimulated by access to sexually explicit materials.

In light of the Supreme Court's recent decision in Nguyen, we agree with the State. Like the defendants in that case, Stark committed offenses that demonstrate an inability to control sexual urges. Prohibitions on accessing materials and entering businesses whose purpose is to stimulate sexual urges is reasonably crime related.

Finally, Stark contends Condition 16, which requires him to: "Have no direct and/or indirect contact with minors under the age of 16 without the prior approval of the CCO," is not crime related. This argument is without merit. Stark committed sex crimes against a child. The prohibition on contact with minors is crime related. See State v. Riles, 135 Wn.2d 326, 347, 957 P.2d 655 (1998) (upholding a prohibition on contact with minors as crime related where the defendant was convicted of rape of a child).

Vagueness challenges

The guarantee of due process requires that laws not be vague. U.S. CONST. amend. XIV, §1; WASH. CONST. art. 1, §3. A condition is unconstitutionally vague if it (1) does not sufficiently define the prohibition so an ordinary person can understand the prohibition; or (2) does not provide sufficiently ascertainable standards to protect against arbitrary enforcement. State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008). Conditions that implicate an offender's First Amendment rights must meet a stricter standard of definiteness. Id. at 753. But

impossible standards of specificity are not required. Id. at 760. "If persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." Id. (internal quotation marks omitted) (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)). A community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct. Nguyen, slip op. at 6.

In Nguyen, the Supreme Court rejected two vagueness challenges. The court upheld a community custody condition that required the offender to inform the CCO of any "dating relationship," holding that a person of ordinary intelligence can distinguish a dating relationship from other types of relationships. Id. at 10. The Nguyen court also upheld a prohibition on accessing sexually explicit material. Id. at 14. The condition in that case required the offender not to "possess, use, access or view any sexually explicit material as defined by RCW 9.68.130." Id. at 3. The referenced statute defines sexually explicit material as:

> [A]ny pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or of anthropological significance shall not be deemed to be within the foregoing definition.

Id. at 8 (quoting RCW 9.68.130(2)). The Nguyen court held that the phrase "sexually explicit material" is sufficiently clear. Id. The court rejected an argument that the statutory definition invites arbitrary enforcement, holding that persons of ordinary intelligence can discern works of art and anthropological significance. Id.

In this case, Condition 9 prohibits Stark from entering "sex-related businesses, including . . . any location where the primary source of business is related to sexually explicit material." Condition 10 prohibits accessing or viewing "any sexually explicit material as defined by RCW 9.68.130." Stark contends "sexually explicit material," as used in these conditions, is impermissibly vague. The argument is foreclosed by Nguyen. The conditions are not unconstitutionally vague.

Stark also raises a vagueness challenge to Condition 18, which requires him to avoid "areas where children's activities regularly occur or are occurring." We considered similar conditions in State v. Irwin, 191 Wn. App. 644, 364 P.3d 830 (2015) and Norris, 1 Wn. App. 2d at 87.

In Irwin, we struck a condition requiring the defendant not to "frequent areas where minor children are known to congregate, as defined by the supervising CCO," holding that, "[w]ithout some clarifying language or an illustrative list of prohibited locations," the phrase was impermissibly vague. Irwin, 191 Wn. App. at 652, 655. And, because the condition allowed the CCO to define which areas were prohibited, it invited arbitrary enforcement. Id.

In Norris, the condition at issue prohibited the defendant from "any parks/playgrounds/schools and or any places where minors congregate." Norris, 1 Wn. App. 2d at 95. The State conceded that "and or any places" should be stricken from the condition. Id. at 95-96. With that concession, the condition

prohibited entering "any parks, playgrounds, or schools where minors congregate."

Id. at 96. We upheld the amended condition as sufficiently clear.[3] Id.

The condition at issue in this case requires that Stark:

Stay out of areas where children's activities regularly occur or are occurring without the prior approval of the CCO and/or treatment provider. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO.

Stark objects to the phrase "areas where children's activities regularly occur," arguing that it is unclear when children's activities "regularly occur" and how far an "area" extends. He also asserts that the condition gives unbridled discretion to the CCO. And, at oral argument, Stark argued that the condition is vague because it refers to "children" and "youth" without establishing if these terms are synonymous.

We agree in part. The phrase "regularly occur" is unclear because it provides no standards for determining the frequency or regularity with which a children's activity must take place for the area to be permanently off limits. And the State has provided no rationale for requiring Stark to stay out of areas where children's activities sometimes occur, such as a sports field, even when no children are present. The phrase "areas where children's activities are occurring," in

---

[3] The Supreme Court accepted review of two issues in Norris and consolidated the case with Nguyen. Nguyen, slip op. at 1-2. The prohibition on entering "any parks, playgrounds, or schools where minors congregate" was not before the Supreme Court. Since Norris, Divisions Two and Three have divided over whether the phrase "places where children congregate," accompanied by an illustrative list, is sufficiently clear. State v. Johnson, ___Wn. App. ___, 421 P.3d 969 (2018); State v. Wallmuller, ___Wn. App. ___, 423 P.3d 282 (2018). A majority of the Johnson court held that the condition provided fair notice that the offender must "avoid locations where individuals under 16 collect together in groups. Outside of special circumstances (such as a children's day or event), universities, national parks, and adult areas of worship would not be covered." Johnson, 421 P.3d at 973. The majority in Wallmuller, in contrast, held that the word "congregate" is impermissibly vague, the illustrative list did not cure the inherent vagueness, and the condition invited arbitrary enforcement. 423 P.3d at 285.

contrast, is not unconstitutionally vague. A person of ordinary intelligence can discern and avoid an area where a children's activity is occurring. We remand for the sentencing court to strike the words "regularly occur" or fashion a new condition consistent with this opinion.

We agree with Stark that the use of "children" and "youth" is impermissibly vague because it is unclear whether, in this context, the words are synonymous. Upon remand, the sentencing court may replace the word "youth" with the word "children's" or otherwise redact the condition for consistency.

We reject Stark's argument that Condition 18 gives unbridled discretion to the CCO. In this case, the first sentence establishes a standard and requires Stark to stay out of areas where children's activities are occurring. The second sentence provides an illustrative list, ending with "any specific location identified in advance by DOC or CCO." Unlike the condition in Irwin, the condition in this case only authorizes the CCO to designate in advance a specific location where children's activities are occurring. It does not invite arbitrary enforcement.

Other constitutional challenges

Stark challenges several conditions on the grounds that they impermissibly restrict constitutional rights. The sentencing court may impose limitations upon fundamental rights provided they are imposed sensitively. State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Such restrictions must be reasonably necessary to accomplish the essential needs of the state and public order. Id. at 37-38 (quoting Malone v. United States, 502 F.2d 554, 556 (9th Cir.1974)). See

also Bahl, 164 Wn.2d at 757-58 (discussing conditions that restrict First Amendment rights).

A portion of Condition 5, discussed above, requires Stark to disclose his sex offender status prior to any sexual contact. Stark argues that a future relationship between consenting adults is unrelated to his offense and, thus, a restriction on such a relationship is not reasonably necessary to protect the public. He cites Janus v. Am. Fed'n of State, County, and Mun. Emps., Council 31, ___ U.S. ___, 138 S. Ct. 2448, 2463-64, 201 L. Ed. 2d 924 (2018), for the proposition that compelling speech implicates a person's First Amendment rights.

Although the challenged condition implicates Stark's First Amendment rights, it is sensitively imposed and reasonably necessary. Stark was convicted of sex crimes against the minor child of a woman with whom he was having sexual contact. Requiring Stark to disclose his sex offender status before commencing a sexual relationship is reasonably necessary to protect the public.[4]

Stark next challenges Condition 8, which requires him to:

Consent to DOC home visits to monitor compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of residence in which the offender lives or has exclusive/joint control/access.

Stark argues that this condition violates his rights under the Fourth and Fourteenth Amendments. The constitutionality of an inspection condition, however, depends

---

[4] Stark's case is distinguishable from United States v. Reeves, 591 F.3d 77, 80 (2nd Cir. 2010), in which the court struck a condition requiring an offender to "notify the Probation Department when he establishes a significant romantic relationship and . . . inform the other party of his prior criminal history concerning his sex offenses." The offender in that case maintained relationships with his children and there had been no allegations of abuse or domestic violence in those relationships. Id. at 81-82.

on the particular circumstances of enforcement. State v. Cates, 183 Wn.2d 531, 535-36, 354 P.3d 832 (2015) (quoting Sanchez v. Valencia, 169 Wn.2d 782, 789, 239 P.3d 1059 (2010)). The condition is not ripe for pre-enforcement review. Id.

Next, Stark challenges a condition requiring him to submit to urinalysis and breathanalysis. The sentencing court imposed a standard condition requiring Stark to refrain from controlled substances except where lawfully prescribed. See RCW 9.94A.703(2)(c) (stating that this condition shall be imposed unless waived by the court). But the court declined to impose a prohibition on consuming alcohol because there was no connection between alcohol and Stark's offenses. Condition 12 requires Stark to "[b]e available for and submit to urinalysis and/or breathanalysis upon the request of the CCO and/or the chemical dependency treatment provider."

Stark contends Condition 12 violates his privacy interests under the Fourth Amendment and article I, section 7 of the Washington Constitution. He argues that random drug testing is only constitutional where it promotes rehabilitation, as where the defendant has been convicted of a drug offense. The State concedes that the breathanalysis portion of Condition 12 is invalid because the sentencing court did not prohibit Stark from consuming alcohol. But the State argues that, because the court properly prohibited Stark from using controlled substances, it may require him to submit to urinalysis to monitor compliance with this prohibition.

The parties rely on State v. Olsen, in which the Washington State Supreme Court upheld random urinalysis for probationers convicted of driving under the influence (DUI). 189 Wn.2d 118, 134, 399 P.3d 1141 (2017). The Olsen court

held that, because random drug testing implicates probationers' privacy interests, the intrusion is only lawful where it is narrowly tailored to meet a compelling state interest. Id. at 127-28. The court upheld the condition because the State has a strong interest in supervising DUI probationers and random urinalysis is narrowly tailored to meet that interest. Id. at 128, 134.

In discussing this issue, the Olsen court stated that random drug tests may be imposed "to assess compliance with a valid prohibition on drug and alcohol use." Id. at 130. The Olsen court reasoned that the trial court properly conditioned the defendant's release upon her agreement to refrain from drugs and alcohol and "[i]t follows that the trial court also has authority to monitor compliance with that condition through narrowly tailored means." Id. The court rejected an argument that upholding the condition would open the door to permitting random, suspicionless searches in all situations. Id. at 132. The Olsen court held that the condition authorized only a search to test for drugs and alcohol, a search that was reasonable in the circumstances of that case:

> Olsen was convicted of DUI, a crime involving the abuse of drugs and alcohol. A probationer convicted of DUI can expect to be monitored for consumption of drugs and alcohol, but should not necessarily expect broader-ranging intrusions that expose large amounts of private information completely unrelated to the underlying offense.

Id. at 133. Reiterating its conclusion that random drug testing, in that case, was narrowly tailored and directly related to the probationer's rehabilitation, the Olsen court stated that "random UAs [urine analyses], under certain circumstances, are a constitutionally permissible form of close scrutiny of DUI probationers." Id. at 134.

Stark argues that, under Olsen, random urinalysis is permissible in a DUI probation case but not in a case such as his, where the crime is unrelated to drugs or alcohol. Stark also asserts that Olsen is distinguishable because the defendant in that case was subject to a maximum of five years' probation, whereas Stark is subject to lifetime supervision. The State contends that, under Olsen, the court may require suspicionless drug testing in any case where a prohibition on controlled substances is imposed.

We read Olsen to hold that requiring random urinalyses was permissible in that case because it was narrowly tailored to address the probationer's DUI offense. Id. at 129, 133. Olsen does not support the general proposition that random urinalysis is constitutional to monitor a standard condition prohibiting the use of controlled substances. Stark was not convicted of a drug offense, and the State points to no evidence of a connection between Stark's offenses and drugs. We conclude that the urinalysis requirement is not narrowly tailored or reasonably necessary. Condition 12 must therefore be stricken.

Finally, Stark challenges Condition 16 on constitutional grounds. The condition, discussed above, prohibits Stark from contact with minors under the age of 16. Stark argues that this condition interferes with his fundamental right to familial relationships because it will prevent contact with future children or grandchildren. The State argues that, because the existence of future children or grandchildren is speculative, this issue is not ripe for review.

An issue is not ripe for review when it requires further factual development. Bahl, 164 Wn.2d at 751. Likewise, a claim that is speculative and hypothetical is

not ripe for review. Lewis County v. State, 178 Wn. App. 431, 440, 315 P.3d 550 (2013). In this case, Stark points to no evidence that he has minor children or grandchildren. C.W. and Stark's child with Danelle are both over the age of 16. Because any infringement of Stark's right to a relationship with future children or grandchildren is speculative, Stark's challenge to Condition 16 as a violation of his fundamental right to parent is not ripe for review.

We remand for the sentencing court to strike that portion of Condition 5 prohibiting sexual contact in a relationship and Condition 12 in its entirety. We remand for the court to redact Condition 18 or fashion a new condition consistent with this opinion. We affirm the remaining conditions.

Andrus, J.

WE CONCUR:

Dwyer, J.

Appelwick, C.J.