# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| | ) | No. 75127-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| EDDY GONZALES, | ) | PUBLISHED OPINION IN PART |
| | ) | |
| | ) | |
| Appellant. | ) | FILED: December 26, 2017 |

SPEARMAN, J. — The constitutional prohibition against double jeopardy forbids multiple punishments for the same offense. In a case where there is a risk of multiple convictions based on a single act, the jury must be instructed that separate and distinct acts must support each conviction. When the trial court fails to so instruct and multiple convictions occur, there is a potential for double jeopardy. Here, a jury convicted Gonzales of first degree child molestation, first degree child rape, and witness tampering. On appeal, Gonzales claims that his convictions for molestation and child rape violated double jeopardy because the jury was not instructed that it needed to find a separate and distinct act to support

each conviction.[1] We disagree because, in light of the entire record before us, it was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense and that each count was based on a separate act. Thus, no double jeopardy violation occurred.

Gonzales also argues that the trial court erroneously provided supplemental jury instructions, admitted improper character evidence, and ordered an unconstitutionally vague community custody condition. And, in a statement of additional grounds, Gonzales alleges a number of other errors. None of the claims have merit.

We find no error and affirm.

## FACTS

When J.G. was six years old, she and her younger brother moved in with their grandfather, Eddy Gonzales, and his wife, Terri. After the move, J.G. typically slept beside her grandfather in her grandparents' bed. About six months after moving in, Gonzales began molesting J.G. He rubbed J.G.'s breasts about fifteen separate times while she was in her grandparents' bed. He placed his hand and fingers on J.G.'s vagina about twenty or twenty-five different times. Once or twice, while in bed, Gonzales made J.G. put her mouth on his penis. Once, she awoke on the couch with his penis in her hand. Another time, J.G. fell asleep on the couch and woke up to find Gonzales engaging in oral sex on her. This sexual abuse ended when J.G. was ten or eleven years old. But after the

---

[1] Gonzales did not object to the deficient instructions below, but a double jeopardy claim is of constitutional proportions and may be raised for the first time on appeal. State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011).

molestation stopped, J.G. once encountered Gonzales masturbating in his room while holding her bra.

When J.G. was eleven years old, she got into a fight with her grandmother, Terri and moved in with her sister, Ashley. She told Ashley about the molestation. On December 4, 2013, Ashley reported the allegations to the police and to Terri. Ashley and Terri drove to the Gonzales home where a police officer was waiting outside. Against the officer's instructions, Terri went inside and confronted Gonzales. She asked him if the allegations were true. Gonzales was apologetic and repeatedly said that he was sorry. Later, when the officers came in, Gonzales admitted that he had touched J.G.'s breasts fifteen times, and used gestures to demonstrate how he touched her. He told an officer that J.G. "helped" him with the molestation and acted like she enjoyed it. Verbatim Report of Proceedings (VRP) at 1225. Gonzales later told his son, J.G.'s father, that he couldn't help himself and that J.G. had come on to him. From jail, Gonzales wrote letters to Terri apologizing and telling her that J.G. could refuse to testify.

Gonzales was charged with first degree rape of a child and first degree child molestation. The State later added a second count of first degree child rape and charged him with tampering with a witness. A jury acquitted Gonzales of one count of first degree child rape, but found him guilty of the remaining charges. Gonzales's sentence included a community custody condition that he "not enter any parks/playgrounds/schools." Clerk's Papers (CP) at 123. Gonzales appeals.

## DISCUSSION

### Double Jeopardy

Gonzales argues that his convictions for child molestation and rape of a child constitute double jeopardy. He contends that in the absence of an instruction that the jury find separate and distinct acts for each count, it was possible that the jury convicted him twice for the same conduct.

We review a double jeopardy claim de novo. Mutch, 171 Wn.2d at 662. The constitutional guaranty against double jeopardy protects a defendant against multiple punishments for the same offense. U.S. Const. amend. V; Wash. Const. art. I, § 9; Mutch, 171 Wn.2d at 661 (quoting State v. Noltie, 116 Wn.2d 831, 848, 809 P.2d 190 (1991)). "A 'defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law.'" State v. Peña Fuentes, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) (quoting State v. Calle, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)). Two offenses are not the same when "there is an element in each offense which is not included in the other, and proof of one offense would not necessarily prove the other. . . ." State v. Vladovic, 99 Wn.2d 413, 423, 662 P.2d 853 (1983).

First degree child molestation requires proof of "sexual contact" with a child. RCW 9A.44.083(1). Sexual contact means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). First degree child rape requires proof of "sexual intercourse" with a child. RCW 9A.44.073(1). Sexual intercourse can be proved by penetration of the vagina or anus, or by "any act of

- 4 -

sexual contact between persons involving the sex organs of one person and the mouth or anus of another. . . ." RCW 9A.44.010(2).

In State v. Land, 172 Wn. App. 593, 600, 295 P.3d 782 (2013) (citing State v. Huges, 106 Wn.2d 675, 682-84, 212 P.3d 558 (2009), this court held that there is a potential double jeopardy violation

> where the only evidence of sexual intercourse supporting a count of child rape is evidence of sexual contact involving one person's sex organs and the mouth or anus of the other person, that single act of sexual intercourse, if done for sexual gratification, is both the offense of molestation and the offense of rape. In such a case, the two offenses are not separately punishable. They are the same in fact and in law because all the elements of the rape as proved are included in molestation, and the evidence required to support the conviction for molestation also necessarily proves the rape.

Here, oral sex was the only act supporting child rape. Under Land, rape of a child and child molestation are the same offense with respect to oral sex. Thus, an instruction that the act of molestation must be separate and distinct from the act of rape should have been given to the jury. Because it was not, there is potential for double jeopardy.

When reviewing a potential double jeopardy violation, we review the entire record to determine if it was "'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act, . . ." Mutch, at 664 (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)). If it was manifestly apparent that the State did not seek multiple punishments for the same act, then there is no double jeopardy violation. Id.

The State's closing argument makes clear that the State did not seek to impose multiple punishments for the same act. After describing child molestation definitions, the State argued,

> [J.G.] says specifically in the bedroom that …the defendant placed his hands down [J.G.'s] underwear and touched her vagina with his hand. She said that this happened between 20 and 25 times…this is clearly done for sexual gratification.
>      Also in the bedroom you have the defendant reaching up her shirt, touching her breasts. She says that this happened about 15 times…this is a purposeful act done for sexual gratification.
>      And then finally you have the incident where he placed his penis in her hand when she was asleep out in the living room.

VRP at 1670. The State did not argue that oral sex constituted child molestation.

For the two counts of child rape, the State explained,

> [O]ral sex equals intercourse in the State of Washington. And that act that was described during the trial by [J.G], actually she said that it happened several times. Not only the sense where he was placing his penis in her mouth, but also the time where he was placing his face and his head up into her crotch and licking her vagina with his tongue. That's all sexual intercourse per state law, and those are acts of rape of a child.

VRP at 1666. The prosecutor then explained that the two acts of rape must be separate and distinct, which could be based on the places where the acts occurred.

> For one, we have the bedroom. We have the defendant placing his penis in her mouth and telling her to do that. This happened as [J.G.] described in her testimony two or three times but she said, definitely more than once. So what that means is that you could sustain your verdicts on counts I and II [for child rape] based on that testimony alone. She said it happened more than once.
>      But [J.G.] also told us about some other things that the defendant did. In the living room the incident where he placed his mouth on her vagina. So the State suggests that based on

> [J.G.'s] testimony – and, again, you can base your verdicts on
> any act that you believe establishes sexual intercourse and rape
> of a child. But the easiest way to do that will be to look at the
> two distinct types of acts. We have the penis in the mouth and
> we have the defendant performing an act of mouth on vagina,
> oral sex on [J.G.].

VRP at 1666-67.

The State distinguished the acts of child molestation and the acts of child rape. It described the type of conduct that supported the child molestation count and the child rape counts and gave examples. The State never argued that the same conduct, oral sex, could be both child rape and child molestation.

Gonzales contends that it was not manifestly apparent that the State was not seeking multiple punishments for the same act because J.G.'s testimony was ambiguous regarding timing and details. But J.G.'s testimony was clear and consistent. She testified that Gonzales fondled her breasts multiple times while sharing a bed. He fondled her vaginal area multiple times (without penetration) while sharing a bed, and once placed his penis in her hand while she was asleep on the couch. J.G. additionally testified that while in bed, Gonzales placed his penis in her mouth, and that while on the couch, he placed his mouth on her vagina. While she did not always provide specific dates, she gave a range of time when they occurred, and Gonzales does not argue that her testimony about these acts fell outside the charging period.

Gonzales also argues that the prosecutor told the jury that there were many acts on which it could base a guilty verdict so it was not manifestly apparent that he was not seeking multiple punishments for the same offense. But

the prosecutor gave categories of abuse that would support each charge. The prosecutor never told the jury that it could find both molestation and rape from the same conduct.

It was manifestly apparent that the State did not seek to punish Gonzales more than once for the same act, so there is no double jeopardy violation.

Supplemental Jury Instructions

Gonzales argues that the trial court erred when it gave a supplemental jury instruction after the jury began deliberating. He contends that the new instruction on separate counts went beyond matters argued to the jury.

Whether to give further instructions in response to a request from a deliberating jury is within the discretion of the trial court. State v. Becklin, 163 Wn.2d 519, 529, 182 P.3d 944 (2008). We review the trial court's decision for abuse of discretion. Id. "[S]upplemental instructions should not go beyond matters that either had been, or could have been, argued to the jury." State v. Ransom, 56 Wn. App. 712, 714, 785 P.2d 469 (1990) (quoting Sams v. Commercial Standard Ins. Co., 157 Kan. 278, 139 P.2d 859 (1943)).

After one day of deliberations in Gonzales's trial, the State brought to the court's attention that it did not instruct the jury to consider multiple counts separately as provided in 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 3.01 (4th ed. 2016) (WPIC). The State proposed that WPIC 3.01 be read to the jury along with WPIC 4.68, regarding additional instructions that go to the jury. The defense said that it was "just as surprised" as the State that the jury was not instructed on WPIC 3.01. Gonzales argued that

the delay in giving this instruction would result in irreparable harm and requested a mistrial. The trial court denied a mistrial and instructed the jury that

> [a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count. You are not to give this instruction special importance just because it was read separately. Consider it along with all of the instructions you have received.

VRP at 1725. The jury returned its verdict some time later that day.

The trial court did not abuse its discretion by giving the supplemental jury instruction because WPIC 3.01 did not exceed matters that were argued or could have been argued to the jury. It is also evident from the record that Gonzales assumed that the jury instructions contained WPIC 3.01, so he cannot show that his cross examination or closing argument would have changed if the instruction had been offered before deliberations began. We affirm the trial court's supplemental instructions.

Lustful disposition evidence

Gonzales argues that the trial court erred by admitting testimony that he masturbated while holding J.G.'s bra. He contends this uncharged misconduct goes to propensity and should be excluded under ER 404(b). He argues that it was an error to admit this testimony to show his "lustful disposition" toward J.G., particularly because it occurred after the charged conduct.

The decision to admit evidence is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997). There is an abuse of discretion when the trial

court's decision is manifestly unreasonable or based upon untenable grounds or reasons. Id.

Rules of Evidence (ER) 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, . . ." Washington courts have consistently held one such other purpose is evidence of collateral sexual misconduct when it shows the defendant's lustful disposition toward the victim. State v. Ray, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991); State v. Camarillo, 115 Wn.2d 60, 70, 794 P.2d 850 (1990); State v. Ferguson, 100 Wn.2d 131, 133-34, 667 P.2d 68 (1983); State v. Medcalf, 58 Wn. App. 817, 822-23, 795 P.2d 158 (1990). This is because a lustful disposition makes it more likely that the defendant committed the crime charged. Ray, 116 Wn.2d at 547. Evidence of uncharged sexual misconduct occurring before or after the charged acts is admissible. State v. Crowder, 119 Wash. 450, 205 P. 850 (1922). In an ER 404(b) analysis, the trial court must balance probative value against the potential for unfair prejudice. Camarillo, 115 Wn.2d at 69-70.

Here, the trial court admitted J.G.'s testimony that she saw Gonzales masturbating while holding her bra. The court reasoned that Gonzales's behavior was sexual conduct that showed lustful disposition toward J.G. The court also found that the probative value of the evidence was not outweighed by unfair prejudice.[2] The trial court did not abuse its discretion. Gonzales's action shows a

---

[2] Gonzalez does not dispute that the trial court properly found by a preponderance of the evidence that the alleged conduct occurred. See State v. Benn, 120 Wn.2d 631, 653, 845 P.2d 289 (1993).

sexual desire for J.G. Thus, it goes toward an "other purpose" as provided under ER 404(b).

Gonzales argues that any uncharged sexual misconduct is unfairly prejudicial in a sex abuse prosecution. But the admitted evidence was not unfairly prejudicial because his act was not more inflammatory than the charged crime, and J.G. was only indirectly victimized by it.

Gonzales also argues that the admitted testimony had diminished probative value because the incident occurred after the alleged abuse. But an act occurring after the charged abuse is relevant to lustful disposition. Crowder, 119 Wash. 452. It was not an abuse of discretion to conclude that the probative value of this testimony was not outweighed by unfair prejudice.

We affirm the admission of the lustful disposition testimony.

Community Custody Condition

Gonzales argues that his community custody condition stating "[d]o not enter any parks/playgrounds/schools" is unconstitutionally vague and not crime-related.[3]

We review community custody conditions for abuse of discretion, and will reverse them only if they are manifestly unreasonable. State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). An unconstitutional condition is manifestly unreasonable. Id. Laws must provide ordinary people fair warning of proscribed conduct, and have standards that are definite enough to protect against arbitrary

---

[3] The State first argues that this court should decline to consider Gonzales's arguments because they are not supported by legal authority or citation. But we conclude that Gonzales sufficiently briefed his argument on this issue, and so we consider it on the merits.

enforcement. Id. A community custody condition is unconstitutionally vague if it fails to do either. Id. This court recently held that a community condition stating "Do not enter any parks, playgrounds, or schools where minors congregate" is not unconstitutionally vague. State v. Norris, No. 75258-8-I (Wash. Ct. App. Oct. 30, 2017). The condition here is even clearer than that in Norris, because one need not consider whether minors congregate in the prohibited areas. Those areas are simply off limits. This community custody condition is not vague.

Community custody conditions also must be reasonably related to the crime. Irwin, 191 Wn. App. at 656 (citing State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)). The condition need not exactly mirror the means and methods of the charged crime to be crime related. In Kinzle, the court prohibited the defendant from dating women who have children even though the defendant sexually abused the children of a friend with whom he was not in a dating relationship. Kinzle, 181 Wn. App. at 785. Because Gonzales sexually abused a minor, prohibiting him from frequenting locations oriented towards children is related to his crime.

We affirm the community custody conditions.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. See RCW 2.06.040.

Statement of Additional Grounds

Gonzales advances a number of additional challenges in his statement of additional grounds.

Gonzales argues that the jurors were biased to his crime. But he does not point to evidence of bias in voir dire, which took place over five days, or during trial. His argument lacks support in the record. He then argues that "many lies were proven." To the extent that any witness's testimony was impeached, that would go toward the credibility of the witness. Credibility determinations are for the trier of fact and cannot be reviewed on appeal. Camarillo, 115 Wn.2d at 71.

Gonzales argues that officers entered his house without a warrant. But as the trial court concluded in a pretrial motion to suppress, no warrant was required because entry was based on a valid caretaking function, and warnings prior to entering the home were not required because the officers did not intend to conduct a warrantless search.

Gonzales argues that he was interviewed before receiving Miranda warnings.[4] When the officers went into the house, Terri was yelling at Gonzales. An officer did try to talk to Gonzales, but was interrupted by Terri. Meanwhile, Gonzales was telling Terri that he was sorry. An officer led him to a back bedroom, and read him Miranda warnings. Gonzales said that he understood the warnings, and agreed to speak with the officer. The court found that the statements to Terri were not in response to interrogation, that Gonzales then waived his right to silence, and his statements were therefore admissible. The court did not err.

Gonzales argues that all witnesses were in a room together at the police station, allowing them to confer. There is no evidence in the record that the

---

[4] Miranda v. Arizona, 384 U,S 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966)

witnesses conferred, so this argument is more properly asserted in a personal restraint petition.

Gonzales argues that at one point during trial, he was roughly placed in handcuffs while jurors were present. Gonzales's attorney requested a mistrial. Based on his observations, the trial judge denied the motion, reasoning that the jury may not have seen the handcuffing, and the force used was appropriate. This was not an abuse of discretion.

Gonzales requested a continuance of the sentencing date because after the trial the prosecutor intercepted a letter that was addressed to his lawyers. The trial court did not err in denying the request because the matter did not relate to sentencing.

Gonzales argues that Terri should not have been permitted to testify because she was heavily medicated. Terri testified that she was on about 18 different prescriptions at one point while J.G. was living with them. Gonzales points to no evidence in the record on appeal that Terri was heavily medicated while testifying.

Gonzales argues that a juror misinterpreted a gun gesture that he made while communicating with his lawyer. During trial, a juror reported seeing Gonzales make a gun gesture with his fingers while J.G. was testifying. Gonzales asked for a mistrial because he believed the gesture was taken out of context. The court denied the mistrial and admonished the jury that any activities by Gonzales during trial were not evidence. It is within the trial court's discretion to determine the appropriate course of action where a defendant misbehaves in the

No. 75127-1-I

courtroom. <u>State v. Fualaau</u>, 155 Wn. App. 347, 360, 228 P.3d 771 (2010). Gonzales does not demonstrate that the gun gesture caused prejudice that could not be rectified by an admonishment to the jury. The trial court did not err in denying a mistrial.

Gonzales argues that he received ineffective assistance of counsel because no witnesses were called for defense, specifically a witness to discount a report that there was yelling inside the house when officers entered. But the officers entered the house in part because Gonzales threatened self-harm, which does not relate to yelling. In addition, the decision by defense counsel whether to call a witness could be considered legitimate trial strategy, which cannot form the basis for an ineffective assistance claim. <u>State v. Humphries</u>, 181 Wn.2d 708, 719-720, 336 P.3d 1121 (2014).

Gonzales appears to argue that the prosecutor engaged in misconduct by making a hand gesture showing how the abuse occurred. But there is no evidence in the record that such a gesture was made. Regardless, there was no objection that would have permitted the court to address the potential misconduct. Thus, any claim of error was waived.

Affirmed.

WE CONCUR:

_____

Spearman, J.

_____

Appelwick, J.

- 15 -

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2017 DEC 26   AM 9: 08