IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83357-0-I |
| Respondent, | DIVISION ONE |
| v. | |
| MAURICE VAN THROWER, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, A.C.J. — Maurice Van Thrower was convicted of two counts of child molestation in 2013 and sentenced to concurrent terms of 180 months to life. The court ordered that he have no contact with his victim. Following our Supreme Court's opinion in State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021), Thrower sought resentencing. In the interim, however, Thrower had reached out to several family members of the victim by letter. At resentencing, the court prohibited Thrower from having contact not only with his victim, but also with any member of the victim's family, specifically naming six individuals. Thrower appeals, contending that the no-contact order prohibitions are not sufficiently crime-related. He also raises several issues in a statement of additional grounds concerning the trial court's treatment of his CrR 7.5 motion, ineffective assistance of counsel, and the characterization of his new sentence. We conclude that the no-contact order prohibitions are sufficiently crime-related and that none of the

Citations and pin cites are based on the Westlaw online version of the cited material.

issues raised in the statement of additional grounds warrant reversal. Therefore, we affirm.

FACTS

A jury convicted Maurice Van Thrower of two counts of first degree child molestation in 2013. Thrower timely appealed and this court affirmed those convictions. State v. Thrower, No. 69950-4-I, slip op. (Wash. Ct. App. June 30, 2014) (unpublished) https://www.courts.wa.gov/opinions/pdf/699504.pdf.

In April 2021, following our Supreme Court's opinion in Blake, 197 Wn.2d 170, Thrower sought a resentencing hearing because his prior simple possession convictions had been included in his offender score. Thrower also challenged the use of a prior felony conviction from California in calculating his offender score. At resentencing, Thrower attempted to raise additional issues related to his original trial, including an earlier attempt to move for a new trial under CrR 7.5. The trial court declined to address the CrR 7.5 motion, as the hearing only concerned resentencing, not a review of Thrower's conviction. Instead, the court transferred the motion to this court under CrR 7.8 as a personal restraint petition.

The State agreed that Thrower's offender score was impacted by Blake. Three simple possession convictions were removed—two from California and one from Washington. The State did not attempt to prove comparability of the California felony conviction. The parties agreed that Thrower's new offender score was nine, leaving the standard range unchanged at 149 to 198 months.

Though the State asked for the same range to be imposed, it also requested that the court include, as a condition of the judgment and sentence, a no-contact order prohibiting contact with "any member" of the victim, T.W.'s, family. The State noted that since the original sentencing in 2013, Thrower had "continue[d] to victimize" the family by sending letters to various family members, offering money or a "potential financial benefit for coming back and recanting." Defense counsel opposed the condition as overbroad and not reasonably crime-related. Thrower addressed the letters at the resentencing hearing. He claimed that his trial attorney failed to interview several of the family members and that he was merely trying to investigate and create a record to prove his innocence.

After reviewing the letters, the court reimposed a sexual assault protection order protecting the victim. It also imposed the State's proposed order prohibiting Thrower from contacting "any member of T.W.'s family." At defense counsel's suggestion, the court listed the names of six family members that Thrower was specifically not to contact, "so that there [wasn't] any question about [whom the order protected]."

Thrower appeals.

## ANALYSIS

### No-Contact Provision

On appeal, Thrower asserts that the no-contact order prohibition against contacting "any member of T.W.'s family" is not sufficiently crime-related as required by statute. He also contends that because the six individuals named in the no-contact order are neither victims nor witnesses, that prohibition is also not

adequately crime-related. We conclude that both prohibitions are reasonably crime-related.

RCW 9.94A.505(9)[1] authorizes trial courts to impose "crime-related prohibitions," such as no-contact orders, as conditions of a sentence. State v. McGuire, 12 Wn. App. 2d 88, 94-95, 456 P.3d 1193 (2020). "Crime-related prohibitions" are orders directly related to "the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). They "may include orders prohibiting contact with victims or witnesses for the statutory maximum term." State v. Armendariz, 160 Wn.2d 106, 108, 156 P.3d 201 (2007). However, "[n]o-contact orders are not limited to the victims of the crime." State v. Navarro, 188 Wn. App. 550, 556, 354 P.3d 22 (2015).

" '[T]his court reviews sentencing conditions for abuse of discretion.' " State v. Nguyen, 191 Wn.2d 671, 683, 425 P.3d 847 (2018) (quoting State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)).[2] Sentencing conditions are usually upheld if they are reasonably crime-related. State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Thus, a court does not abuse its discretion if a

---

[1] The legislature amended this statute in 2019, renumbering the relevant subsection. LAWS OF 2019, ch. 191, § 3. Though the parties cite the old subsection numbering, the text of the subsection has not changed, and we cite to the current version of the statute.

[2] Citing Armendariz, Thrower asserts that whether a court had authority to issue a no-contact order as a sentencing condition is reviewed de novo. 160 Wn.2d at 110. But the holding of Armendariz undermines his argument. In Armendariz, our Supreme Court concluded that "[t]he plain language of the SRA authorizes trial courts to impose crime-related prohibitions, *including no-contact orders*, under the independent authority of RCW 9.94A.505(8) [now renumbered as 9.94A.505(9)]," and therefore, that the trial court did not exceed its authority in imposing a no-contact order as a crime-related prohibition. 160 Wn.2d at 112-14 (emphasis added).

"reasonably related" between the crime of conviction and the sentencing condition exists. State v. Irwin, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015) (quoting State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)). And the prohibited conduct need not be identical to the crime of conviction, but there must be "some basis for the connection." Irwin, 191 Wn. App. at 657.

For example, in Warren, the defendant, who had sexually abused his two stepdaughters, was prohibited from having contact with his wife, the mother of his victims. 165 Wn.2d at 23. Though the defendant's wife was not a victim of his crimes, our Supreme Court affirmed the no-contact order because it was "reasonably related" to the crime. Warren, 165 Wn.2d at 34. The Court explained that the wife "is the mother of the two child victims of sexual abuse for which [the defendant] was convicted; [the defendant] attempted to induce her not to cooperate in the prosecution of the crime; and [the defendant's wife] testified against [the defendant] resulting in his conviction of the crime." Warren, 165 Wn.2d at 34.

Warren supports upholding the no-contact order in the present case. Here, letters between Thrower and various members of T.W.'s family were introduced into evidence at resentencing.[3] The letters revealed that Thrower had

---

[3] Thrower maintained that he sent the letters because his counsel failed to interview certain family members that could help prove his innocence. Thrower offered the following explanation:

> First, let me address what I was truly attempting to do with the letters. In the appeal process, the Court told me that because [my attorney] didn't interview the grandma, the uncle, and the uncle's baby's mom and the other cousin to that I couldn't—it was mute [sic]. I couldn't do anything because I didn't have what those

offered financial incentives to members of the family in exchange for T.W. and

her mother recanting their original trial testimony, similar to the defendant in

Warren.[4]  Addressing the letters, the court stated

> [a]nd in taking a look at the letters . . . it is clear to me that you are communicating with [T.W's] mother in order to manipulate her and to try to obtain things for which you are not entitled to do through this process.  So I am going to order no contact with [T.W's] mother, her grandmother and her family as a condition of the sentence. . . . Whether or not you are seeking to have testimony for what you believe to be your evidentiary thing is going to be a separate issue with that, but the way in which you're communicating with them I find to be significantly different than that.

Given Thrower's persistent attempts to contact T.W. via third parties, it

was reasonable for the resentencing court to include in the no-contact order

other close familial parties.  Doing so prevents Thrower from harassing or

revictimizing T.W. and her family and therefore, is crime-related.

---

individuals would have said in my appeal.  So what I'm attempting to do, since I'm pro se, I don't have any money, I can't get a private investigator, I wrote the Court, I asked the Court to have [my attorney interview the family members].  I've been very diligent in trying to show that I am innocent. . . . I didn't offer no one any money.  That is just money that I feel that I am owed for being wrongfully convicted.

[4] For example, in one of the letters, Thrower wrote,

Its time for the truth to come to the forefront and allow me to hold the Detective and Prosecutor accountable for their over zealous [sic] prosecution. . . . Plus I need that purse the State of Washington about to cough up for wrongfully convicting me.  So yes Jen go to your daughter, or let her read this letter and she will let you know that she really didn't want this to happen to me. . . . I'm innocent!!!  And the truth is worth a lot of money at this point (Hundred of Thousands), and I'm willing to share!!

Statement of Additional Grounds

In a statement of additional grounds, Thrower argues that the court erred in transferring his CrR 7.5 motion for a new trial to this court as a personal restraint petition, that he received ineffective assistance from his resentencing counsel, that the court orally imposed a determinate sentence, and, in the alternative, that the Indeterminate Sentencing Review Board is unconstitutional. We address each argument in turn.

1. CrR 7.5 and CrR 7.8

Thrower contends that the court violated his due process rights by transferring his CrR 7.5 motion for new trial to this court to consider as a personal restraint petition. We disagree.

In general, a person seeking to challenge their conviction or sentence has 30 days to initiate a direct appeal. RAP 5.2(a). "[A]ny form of postconviction relief other than a direct appeal" is a "collateral attack." RCW 10.73.090(2). Most collateral attacks must be brought within "one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). Collateral attacks filed in superior court are governed by CrR 7.8. State v. Molnar, 198 Wn.2d 500, 508, 497 P.3d 858 (2021). CrR 7.8(c)(2) requires the trial court to transfer untimely motions to this court. State v. Smith, 144 Wn. App. 860, 863, 184 P.3d 666 (2008). "[I]f the superior court determines that the collateral attack is untimely, then the court must transfer it to the Court of Appeals without reaching the merits." Molnar, 198 Wn.2d at 509. We review a trial court's ruling on a CrR 7.8

7

motion for an abuse of discretion. State v. Robinson, 193 Wn. App. 215, 217, 374 P.3d 175 (2016).

Here, Thrower's CrR 7.5 motion for new trial is clearly a collateral attack. At the close of his original trial, Thrower attempted to file a CrR 7.4 motion for "arrest of judgment," that is, a motion seeking to vacate the sentence. But that motion was not filed because his attorney believed it was frivolous. And when Thrower brought up counsel's failure to file the motion at his first sentencing, the court agreed with his attorney that the motion was frivolous. At resentencing, Thrower tried to move under CrR 7.5 for a new trial on the basis that the original sentencing court erred in not addressing his motion for arrest of judgment. The resentencing court declined to entertain the motion, stating that the hearing was only for "resentencing but not a review of [Thrower's] conviction." Accordingly, the court transferred Thrower's motion to this court as a personal restraint petition pursuant to CrR 7.8(c)(2). Under this procedure, a petitioner's opportunity to be heard is not terminated—it is simply transferred to this court. Because the court correctly followed the transfer procedure under CrR 7.8, we conclude it did not abuse its discretion. And since Thrower's personal restraint petition is currently before this court, we decline to reach the merits of his CrR 7.5 motion.

2. Ineffective Assistance of Counsel

Thrower contends that his defense counsel was ineffective by not objecting to the State using prior convictions, now invalidated by Blake, at resentencing. But contrary to Thrower's contention, the State acknowledged that

8

Thrower's criminal history had been affected by Blake and agreed that his offender score should be adjusted accordingly. We conclude that counsel was not ineffective.

The Sixth Amendment to the United States Constitution and Article I, Section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). Washington has adopted the two-pronged test set out in Strickland v. Washington for evaluating whether a defendant had constitutionally sufficient representation. 466 U.S. 668, 80 L. Ed. 2d 674 (1984); State v. Cienfuegos, 144 Wn.2d 222, 226, 25 P.3d 1011 (2001). Under Strickland, the defendant must show both (1) deficient performance, and (2) resulting prejudice to prevail on an ineffective assistance claim. 466 U.S. at 687; State v. Jones, 183 Wn.2d 327, 339, 352 P.3d 776 (2015).

Counsel's performance is deficient if it falls "below an objective standard or reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice exists if there is a reasonable probability that "but for counsel's deficient performance, the outcome of the proceedings would have been different." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "The defendant must affirmatively prove prejudice and show more than a 'conceivable effect on the outcome' to prevail." Estes, 188 Wn.2d at 458 (some internal quotation marks omitted) (quoting State v. Crawford, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006)). There is a strong presumption that counsel's representation was reasonable. Kyllo, 166 Wn.2d at

9

862. Moreover, performance is not deficient if counsel's conduct qualifies as a legitimate trial strategy or tactic. Kyllo, 166 Wn.2d at 863. We review ineffective assistance of counsel claims de novo. Jones, 183 Wn.2d at 338-39.

Here, pursuant to Blake, Thrower's three simple drug possession convictions were removed and his offender score was recalculated to nine. 197 Wn.2d 170. Both parties agreed that this was the correct score. The State did not attempt to include Thrower's California felony conviction through a comparability analysis. Though Thrower challenges his counsel's failure to object to the simple possession convictions and California felony convictions being included as part of his offender score calculus, those convictions were not included. Accordingly, there was nothing for Thrower's counsel to object to and his counsel was not ineffective.

### 3. Determinate Sentence

Thrower asserts that at resentencing, the court orally stated a different sentence than the one contained in the judgment and sentence. He claims that, contrary to the judgment and sentence, the court imposed a determinate sentence of 180 months rather than an indeterminate sentence with a range of 180 months to life. We are unconvinced.

"Washington is a written order state." State v. Huckins, 5 Wn. App. 2d 457, 469, 426 P.3d 797 (2018). " '[A] trial court's oral statements are no more than a verbal expression of [its] informal opinion at that time . . . necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned.' " Huckins, 5 Wn. App. 2d at 469-70 (some internal

quotation marks omitted) (quoting State v. Dailey, 93 Wn.2d 454, 458-59, 610 P.2d 357 (1980)).

Here, the resentencing court did not orally sentence Thrower to a determinate sentence. The court stated, "I'm going to sentence you to the same thing that Judge Linde [the original sentencing judge] did. I think Judge Linde was in the best position to truly evaluate the case and sentence you to 180 months on each count." Though the court did not explicitly state that it was imposing a maximum term, it stated that it was imposing the same sentence as before—an indeterminate sentence—and the judgment and sentence reflected this. The court did not err.

### 4. Indeterminate Sentence and ISRB

As an alternative argument, Thrower also challenges the imposition of his indeterminate sentence. He contends that RCW 9.94A.507 establishes the standard range for his crime and is in tension with RCW 9A.20.021(1)(a), which allows for "a term of life imprisonment" for a class A felony. He also claims that the Indeterminate Sentencing Review Board (ISRB) is unconstitutional. We disagree on both points.

#### i. Indeterminate Sentence

RCW 9.94A.507 governs the sentences of certain sex offenders. Offenders subject to RCW 9.94A.507 are sentenced to indeterminate sentences within the mandatory minimum sentence and the statutory maximum sentence for the crime. RCW 9.94A.507(3)(a)-(b). RCW 9A.20.021(1) provides the maximum sentences for crimes and reads, in pertinent part:

11

> Unless a different maximum sentence for a classified felony is specifically established by a statute of this state, no person convicted of a classified felony shall be punished by confinement or fine exceeding the following:
>
> (a) For a class A felony, by confinement in a state correctional institution for a term of life imprisonment, or by a fine in an amount fixed by the court of fifty thousand dollars, or by both such confinement and fine.

Washington courts have consistently held that the "statutory maximum" means the maximum sentence under RCW 9A.20.021 and not the high end of the standard range under the Sentencing Reform Act of 1981 (SRA), ch. 9A.94 RCW. In re Pers. Restraint of Sargent, 20 Wn. App. 2d 186, 195, 499 P.3d 241 (2021); see, e.g., State v. Bobenhouse, 143 Wn. App. 315, 331, 177 P.3d 209 (2008) (statutory maximum for first degree child rape is life) (citing RCW 9A.20.021); State v. Adams, 138 Wn. App. 36, 51, 155 P.3d 989 (2007) (statutory maximum for class A felony is life imprisonment) (citing RCW 9A.20.021). The SRA itself acknowledges RCW 9A.20.021. RCW 9.94A.506(3) ("The maximum term of confinement in a range may not exceed the statutory maximum for the crime as provided in RCW 9A.20.021.")

To the extent Thrower asserts that his sentence violates due process, he does not cogently state how his rights were violated. Therefore, we only address whether the court correctly sentenced him under the statutory scheme.

Thrower was convicted of two counts of child molestation in the first degree, which is a class A felony that carries a maximum term of life in prison. RCW 9A.44.083. Under these parameters, the court correctly sentenced Thrower to a minimum term of 180 months on each count with a mandatory

maximum term of life in prison. Thrower's assertion that the two statutes impermissibly conflict does not logically follow from the text of the SRA. In fact, the statutes work in tandem: RCW 9.94A.507 sets forth the applicable range under the SRA and RCW 9A.20.021 provides the sentence. We conclude that the court did not err.

### ii. ISRB

Thrower contends that the ISRB is unconstitutional for multiple reasons. He first alleges that "without the courts [sic] authority[,] the (ISRB) gains authority to override the judge's sentence of the individual," "in stark contrast to the Constitution of the United States." He also contends that RCW 9.95.011(2)(a), which governs minimum terms, runs afoul to the United States Supreme Court's holding in United States v. Haymond, 139 S. Ct. 2369, 204 L. Ed. 2d 897 (2019).

Finally, he claims that the ISRB's authority unconstitutionally "supersedes the actual sentence handed down by the judge without a lawyer, judge or jury, contrary to the well established Fifth and Sixth Amendments." (Underlining omitted.) Therefore, he contends that "to sentence any individual under the ISRB as applied is unconstitutional."

Sentencing Authority: Under RCW 9.94A.507(5), "[w]hen a court sentences a person to the custody of the department [of corrections] . . . the court shall, in addition to other terms of the sentence, sentence the offender to community custody under the supervision of the department and the authority of the [ISRB] for any period of time the person is released from total confinement before the expiration of the maximum sentence."

13

Thrower contends that Third Engrossed Substitute Senate Bill (ESSB) 6151, 57th Leg., Reg. Sess. (Wash. 2001), which revised certain provisions relating to sex offender sentencing, gives the ISRB "authority to override the judge's sentence of the individual" under RCW 9.94A.507(5). Specifically, he takes issue with the following excerpts from the Final Bill Report on Third ESSB 6151, 57th Leg., Reg. Sess. (Wash. 2001):

> The ISRB decides whether to release the person to community custody or retain the person in prison.

And,

> The ISRB must release the offender unless he or she is likelier than not to commit a predatory sex offense.

FINAL B. REP. ON THIRD SUBSTITUTE S.B. 6151, at 3.

But the Final Bill Report merely explains how the ISRB functions in relation to RCW 9.94A.507. And a plain reading of RCW 9.94A.507(5) supports this conclusion. Under RCW 9.94A.507(5), the *court* sentences a person, not the ISRB or Department of Corrections. And under the statute, the court sentences individuals to community custody under the supervision of the ISRB. RCW 9.94A.507(5). The individual and the ISRB are still bound by the maximum sentence imposed by the court. RCW 9.94A.507(5). The ISRB does not "override" the sentencing judge's authority as Thrower contends.

RCW 9.95.011(2)(a): Thrower takes issue with the following language from RCW 9.95.011(2)(a): "If the [ISRB] does not release the person, it shall set a new minimum term not to exceed an additional five years. The [ISRB] shall review the person again not less than ninety days prior to the expiration of the

14

new minimum term." He asserts that this language is "egregous [sic] when looking at the holding in Haymond," in which the Court noted that "a jury must find any facts that trigger a *new* mandatory minimum prison term." 139 S. Ct. at 2380.

RAP 3.1 provides that "[o]nly an aggrieved party may seek review by the appellate court." "While RAP 3.1 does not itself define the term 'aggrieved,' Washington courts have long held that '[f]or a party to be aggrieved, the decision must adversely affect that party's property or pecuniary rights, or a personal right, or impose on a party a burden or obligation.' " Randy Reynolds & Assocs., Inc. v. Harmon, 193 Wn.2d 143, 150, 437 P.3d 677 (2019) (quoting In re the Matter of the Parentage of X.T.L., No. 31335-2-III, slip op. at 17 (Wash. Ct. App. Aug. 19, 2014) (unpublished) https://www.courts.wa.gov/opinions/pdf/313352.unp.pdf). Thrower does not contend that he has been subjected to the procedure described in RCW 9.95.011(2)(a) and we therefore decline to issue an advisory opinion.

Fifth and Sixth Amendments: The Fifth Amendment provides for a grand jury in capital crimes, protects against double jeopardy and self-incrimination, and includes due process and takings clauses. U.S. CONST., art. V. The Sixth Amendment protects the right to a speedy and public trial by an impartial jury. U.S. CONST., art. VI.

We first note that although Thrower challenges the ISRB's constitutionality under the Fifth Amendment, he does not specify which provision the ISRB violates. "Passing treatment of an issue or lack of reasoned argument is

insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996). And we will not consider an inadequately briefed argument. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). Accordingly, we decline to consider Thrower's Fifth Amendment argument.

The constitutionality of the ISRB under the Sixth Amendment, however, is settled law. The United States Supreme Court considered the constitutionality of Washington's indeterminate sentencing scheme in Blakely v. Washington and concluded that it did not run afoul with the Sixth Amendment. 542 U.S. 296, 308-09, 159 L. Ed. 2d 403 (2004).

Thrower also asserts that "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty" and therefore, "to sentence any individual under the ISRB as applied is unconstitutional." To the extent that Thrower argues that only juries may impose sentences, he is mistaken. The legislature has the power to define sentences statutorily, and it is traditionally the court's power to decide the appropriate sentence from within those restrictions. State v. Ammons, 105 Wn.2d 175, 180, 713 P.2d 719 (1986). The ISRB is a sentencing scheme created by the legislature. And here, Thrower was *convicted* by a jury. Contrary to Thrower's assertion, the ISRB is the mechanism by which individuals with indeterminate sentences, like Thrower, are released earlier than their court-imposed maximum sentence. See In re Pers. Restraint of Dodge, 198 Wn.2d 826, 829, 502 P.3d 349 (2022) (explaining statute requires ISRB to

16

employ a presumption of release). Thrower's argument fails and we decline to conclude that the ISRB is unconstitutional.

We affirm.

_Smith, A.C.J._

WE CONCUR:

_Mann, J._