IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40351-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REYMUNDO IZAAK HERNANDEZ, | ) | UNPUBLISHED OPINION |
| Also known as REYMUNDO "REY" I. | ) | |
| HERNANDEZ, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Reymundo Hernandez appeals several community custody conditions that were imposed after he pleaded guilty to second degree rape of a child committed against his stepdaughter. He contends that some of the conditions violate his constitutional rights and others are not crime related. Hernandez also filed a statement of additional grounds (SAG) for review.

We affirm all the community custody conditions except those concerning internet use: 17, 18, and 19. We remand for the limited purpose of striking these three conditions.

BACKGROUND

Hernandez pleaded guilty to second degree rape of a child committed against his stepdaughter, K.G., who was approximately 12-13 years old at the time of the crimes.

K.G. had disclosed to her mother, Jessica, that Hernandez had been raping her for approximately 18 months. At the time, Hernandez and Jessica had been dating for 9 to 10 years and have three biological children together.

Hernandez was charged by information in May 2022, following K.G.'s disclosure. At Hernandez's release hearing in June, he was ordered not to have contact with either K.G. or Jessica. An agreed order amending his release conditions was later entered, allowing Hernandez to have supervised contact with his minor children.

The following year, the State requested a warrant for Hernandez's arrest after receiving complaints that he was not following his release conditions. A family member reported to law enforcement that Hernandez and Jessica were living together with their children. A few weeks later, Hernandez was arrested inside a known drug house where Jessica and their three children were asleep in the living room. The officers reported that the home smelled of a substance consistent with recently smoked fentanyl.

As part of a plea agreement, Hernandez pleaded guilty to rape of a child in the second degree. The court ordered the Department of Corrections (DOC) to complete a pre-sentence investigation (PSI) report. During the PSI interview, Hernandez answered questions about his alcohol and drug use. Hernandez explained that he smoked marijuana daily for the six years prior to his arrest and admitted that he has an "addiction" to marijuana.

Hernandez's characterization of his alcohol use was inconsistent. While he claimed he had not consumed alcohol for four years, he admitted drinking a significant amount when camping and bored. The PSI noted that in an earlier interview with his attorney and DOC, Hernandez admitted that prior to his arrest he "had been drinking all week for 5 weeks straight while camping in Montana" and that he "may have been still intoxicated." Clerk's Papers (CP) at 58. He reported buying "three 48 packs and drank most if it myself." CP at 58. Hernandez thought he may need drug/alcohol treatment because he "still craves beer now and then." CP at 70.

The PSI indicated that Hernandez had a history of sexual involvement with minors, noting that years earlier he began a sexual relationship with a 15-year-old female when he was 30 years old. The female was pregnant with Hernandez's child when she was "about 17 years old." CP at 67.

Finally, the PSI concluded that Hernandez has an extensive history of failing to comply "with conditions of supervision for both misdemeanor and felony convictions." CP at 73. The PSI described Hernandez's behavior as manipulative, dishonest, and defiant toward the court. The PSI recommended a standard range sentence of 78 months' confinement with lifetime community supervision and numerous community custody conditions, including restrictions on Hernandez's access to minors.

Prior to sentencing, the court also considered the probable cause affidavit. The affidavit summarized statements that Jessica made to law enforcement shortly before

Hernandez was charged. At one point, Jessica showed officers text messages from Hernandez. The messages seemed to admit he had sexual contact with K.G., but blamed K.G. for instigating the contact and alleged that K.G. was trying to set him up. Jessica also relayed concerns she had about Hernandez's treatment of his own daughters. She reported that when Hernandez changed the youngest daughter's diapers, he was not gentle with "her private areas." CP at 9. When Jessica would comment on this treatment, Hernandez became offended. This behavior led to so many fights that Jessica vowed to change all the diapers to avoid the fights.

The probable cause affidavit also described another prior incident with Hernandez's infant daughter, when Jessica had reported that Hernandez left with his youngest daughter and was gone long enough to cause Jessica to worry. When he returned, the baby's diaper was wet, and the baby's private areas were red and "looked different." Although Jessica suspected some type of abuse, the doctor who examined the baby opined that the baby's rash was from urine and not from sexual abuse.

At the beginning of the sentencing hearing, the trial court advised the attorneys that recent case law made it clear that the court must carefully consider any conditions that restricted Hernandez's right to parent his own children, and it must make appropriate findings if such conditions were imposed.

K.G. gave a statement at the sentencing hearing and indicated that for many years Hernandez played pornography on the television and left pornographic materials lying

4

around the house in full view of K.G. and her siblings. K.G. expressed fear that "[b]ased off of what he did to me, I would fear that it would happen to [my siblings] as well." Rep. of Proc. (RP) at 33. When the court asked K.G., "What gives you concerns about his own biological children?" K.G. answered:

> The simple fact that he was willing to swear up and down, say, "I'm the parent. I'm the parent. You have to do this. You have to do that. You have to do what I say," but he still did it to me. He claimed to consider me one of his own but he still did it to me.

RP at 34.

Jessica also spoke and told the court that Hernandez was not a risk to his three biological children. She explained that he paid all of their bills and child support, that the "kids love their dad," and that they missed him. RP at 45-46. She said that Hernandez had a good relationship with his children and limiting their contact would be devastating.

Hernandez allocuted and apologized to K.G. and his family. He asked the court to impose a special sexual offender sentencing alternative (SSOSA) sentence. Hernandez's attorney addressed the court, urging the court not to impose restrictions on Hernandez's ability to contact his own children. He asserted that Hernandez's relationship with his biological children was different than his relationship with K.G., refuting K.G.'s claim that Hernandez acted like a father to her and pointing out that the two never had an acrimonious relationship. Finally, the attorney argued that the PSI did not indicate that Hernandez would be a danger to his own children.

5

The court denied Hernandez's request for a SSOSA sentence and imposed an indeterminate sentence of 78 months to life followed by community custody for life in accordance with the joint recommendation in the plea agreement.  In addition, the court-imposed several community custody conditions.

Relevant to this appeal, the court prohibited Hernandez from having unsupervised contact with minors, including his own children.  To support this condition, the court made the following findings:

> I do have concerns that you pose a risk of other danger to other children based on all the information in the PSI as well as the probable cause affidavit that I reviewed.
>
> . . . .
>
> And I also am concerned about your interactions with your own children.  I did want to listen, hear from your wife in this case, because I wanted to see if she might be a protective factor to your own children.  And I was not persuaded that she's a protective factor for your—for your own biological children.  In fact, her comments led me to believe, consistent with the PSI and the probable cause affidavit that I reviewed, that she sees you as the—the breadwinner.  I think there's a lot of financial motive she has.  And I don't think she has good judgment as to the danger that you pose to children, and including your own children.  She was certainly not a protective factor with her own daughter.  And so I—I do have concerns.
>
> . . . .
>
> The court is aware that you do have a fundamental constitutional right to have a parenting relationship with your children.  However, the court makes the finding that restricting that right with these conditions is necessary for the preservation of public order; specifically, preventing any future sexual acts on your own children.
>
> The court is also mindful of the PSI, which documented that you had issues going way back with another stepdaughter [sic]. And the court

6

worries that if you are in a position of having that fiduciary duty, even with
your own biological children, that would be very concerning to the court
and the court feels that we'd be placing your children at grave risk.

RP at 54-56.

Additionally, the court imposed all of the conditions listed in Appendix H of the

PSI. Although the court did not go over each individual condition, defense counsel

informed the court that he reviewed the conditions with Hernandez, and they did not need

to be recited. Hernandez did not object to any of these additional conditions.

ANALYSIS

On appeal, Hernandez challenges numerous community custody conditions

imposed by the court. Before considering his specific challenges, we set forth the general

rules on a court's authority to impose such conditions.

"The Sentencing Reform Act of 1981(SRA),[1] provides that "when a court

sentences a person to a term of community custody, the court shall impose conditions of

community custody." *State v. Peters*, 10 Wn. App. 2d 574, 580-81, 455 P.3d 141 (2019).

Under the SRA, community custody provisions are either (1) mandatory, (2) waivable,

(3) discretionary, or (4) special conditions. RCW 9.94A.703.

Discretionary community custody provisions tend to be the most complex aspect

of the statute because of the different requirements based on the subsection of the statute.

For example, some of the discretionary conditions must be crime related. *See, e.g.*,

---

[1] Chapter 9.94A RCW.

RCW 9.94A.703(3)(c), (f) ("crime-related treatment" and "crime-related prohibitions").

However, some only need to have a loose connection to the convicted offense. *See State v. Geyer*, 19 Wn. App. 2d 321, 496 P.3d 322 (2021); *see, e.g.*, RCW 9.94A.703(3)(b), (d) ("Refrain from direct or indirect contact with the victim of the crime or a specified class of individuals" and "Participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community."). And finally, some of the conditions do not require any particular connection. *See, e.g.*, RCW 9.94A.703(3)(a), (e) ("Remain within, or outside of, a specified geographical boundary" and "[r]efrain from possessing or consuming alcohol.").

Among the discretionary conditions, a court is authorized to impose an order that an offender "[c]omply with any crime-related prohibitions." RCW 9.94A.703(3)(f). "Crime-related prohibition[s], in turn, are those orders that prohibit "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). If there is no evidence in the record linking the circumstances of the crime to the particular condition, the court will strike the challenged condition. *State v. Padilla*, 190 Wn.2d 672, 683, 416 P.3d 712 (2018).

For these types of challenges, a "reasonable relationship" must exist between the crime of conviction and the community custody condition. *State v. Irwin*, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015). That is, "there must be 'some basis for the

connection.'" *State v. Nguyen*, 191 Wn.2d 671, 684, 425 P.3d 847 (2018) (quoting *Irwin*, 191 Wn. App. at 657). We will review the "factual basis for a trial court's implicit finding that a condition is crime related using a 'substantial evidence' standard." *Peters*, 10 Wn. App. 2d at 591.

However, where there is no objection to community custody conditions below, "there is no reason for the parties or the court to create a record on the relationship between the crime and the conditions imposed." *Id*. As such, we are not required to consider an argument that a condition is not crime-related "when the offender had the opportunity to raise the contention in the trial court, creating a record, and failed to do so." *Id*.

With these principles in mind, we turn to Hernandez's specific challenges.

1. COMMUNITY CUSTODY CONDITIONS THAT LIMIT HERNANDEZ'S CONTACT WITH HIS OWN CHILDREN

Hernandez contends that community custody conditions 13, 14, and 15 violate his constitutional right to parent and should be modified to allow unsupervised contact with his biological children. The State responds that the court's findings support the restrictions on Hernandez's contact with his own children.

We review the imposition of community custody conditions for abuse of discretion. *In re Pers. Restratint of Ansell*, 1 Wn.3d 882, 892, 533 P.3d 875 (2023). As such, we will reverse "such conditions only if they are manifestly unreasonable." *Peters*, 10 Wn. App. 2d at 583. "A court abuses its discretion if a condition is either

9

unconstitutional or manifestly unreasonable." *State v. Lee*, 12 Wn. App. 2d 378, 401, 460 P.3d 701 (2020).

The right of a parent to make decisions concerning the care, custody, and control of their children is protected as a matter of substantive due process. *In re the Matter of the Adoption of K.M.T.*, 195 Wn. App. 548, 559, 381 P.3d 1210 (2016). However, the State also has an interest in the welfare of children and can intervene when "parental actions or decisions seriously conflict with the physical or mental health of the child." *In re Dependency of M.-A.F.-S.*, 4 Wn. App. 2d 425, 446, 421 P.3d 482 (2018). For this reason, "[m]ore careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

The SRA affords judges discretionary authority to order a defendant to "[r]efrain from direct or indirect contact with the victim of the crime or a specified class of individuals." RCW 9.94A.703(3)(b). While a court may impose a community custody condition that interferes with a defendant's fundamental right to parent, such conditions "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010) (quoting *Warren*, 165 Wn.2d at 32).

Here, the challenged community custody conditions impose the following restrictions:

10

(13) That you do not have contact with minors without an adult present who has been approved in advance by your CCO[2];

(14) That you do not hold a position of authority or trust over minors without prior approval from your CCO;

(15) That you do not stay the night or reside on premises where minors are also staying the night or reside, without prior approval from your CCO;

CP at 110.

The sentencing court imposed these conditions without exception because it was concerned that Hernandez would victimize his own biological children. Prevention of harm to children is a compelling state interest. *State v. Letourneau*, 100 Wn. App. 424, 439, 997 P.2d 436 (2000). Thus, we must decide whether the record is sufficient to show that the restrictions imposed here are reasonably necessary to prevent Hernandez from committing similar crimes against his biological children. *Id.*

"As to the 'reasonable necessity' requirement, the interplay of sentencing conditions and fundamental rights is delicate and fact-specific, not lending itself to broad statements and bright line rules." *Rainey*, 168 Wn.2d at 377. Here, Hernandez relies on *Letourneau* to support his argument that the record does not support a restriction on contact with his own children. We find *Letourneau* to be factually distinguishable.

In *Letourneau*, the defendant pleaded guilty to two counts of second degree rape of a child for instigating a sexual relationship with one of her primary school students. 100 Wn. App. at 428-29. After the defendant's SSOSA was revoked, the court restricted

---

[2] Community corrections officer.

11

the defendant from unsupervised in-person contact with minors, including her own children. *Id.* at 430.

On appeal, the court struck down this restriction, concluding that the record did not support a finding that such a restriction was reasonably necessary to prevent the defendant from harming her biological children. *Id.* at 444. This court pointed out that the SSOSA evaluators unanimously agreed that the defendant was not a pedophile. *Id.* at 441. Moreover, the defendant's children were not the same age or under the same circumstances as the defendant's victim. *Id.* at 441-42. And while one evaluator expressed general concerns that many people who molest children unrelated to them will later offend against their own children, the court found this general observation to be insufficient to allow interference with one's own children. *Id.* at 442. Instead, the court held "[t]here must be an affirmative showing that the offender is a pedophile or that the offender otherwise poses the danger of sexual molestation of his or her own biological children to justify such State intervention." *Id.*

A more factually analogous case is *State v. Berg*, 147 Wn. App. 923, 198 P.3d 529 (2008), overruled on other grounds by *State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011). In *Berg*, the defendant was convicted of raping his live-in girlfriend's 14-year-old daughter. On appeal, the court upheld a community custody condition that prohibited the defendant from having unsupervised contact with any minor females, including his own children. *Id*. at 941, 943-44. Specifically, the court reasoned:

> [the victim] lived in the home where Berg was acting as her parent when the abuse occurred. By allowing Berg to be alone with [his own child], who also lived in the home as his child, the court reasonably feared that it would be putting [his own child] in the same situation that [the victim] was in when Berg sexually abused her. Thus, the trial court's order restricting contact was reasonably necessary to protect [the defendant's own child].

*Id.* at 942-43.

Here, the circumstances are even more compelling than in *Berg*. The record indicates that Hernandez has a history of victimizing teenage girls, one of whom he parented in his home. During sentencing, K.G. advised the court that Hernandez left pornography around the house and played it on the television for all the children to see. There is also information in the record that Hernandez's wife was, at one point, concerned that Hernandez was victimizing his biological daughter.[3] Finally, the PSI characterized Hernandez as manipulative and concluded that "his ongoing predatory behaviors indicate that he should be considered a high risk to our community." CP at 73.

Hernandez argues that the court's findings are insufficient because they focus primarily on the mother's inability to protect her children instead of Hernandez's penchant to victimize minors. We find this argument unconvincing. The court's focus

---

[3] Hernandez does not separately challenge the court's restriction on his ability to have contact with his son. *See State v. Corbett*, 158 Wn. App. 576, 600, 242 P.3d 52 (2010) (finding that record was sufficient to support no contact with biological sons after defendant was convicted of raping his stepdaughter).

13

on the mother's apparent failure to protect her children does not detract from the court's finding that Hernandez posed a risk to his own children.

The trial court did not abuse its discretion by imposing conditions that limited Hernandez's ability to have unsupervised contact with his minor children.

2.   GEOGRAPHIC RESTRICTIONS

The court ordered Hernandez to "(8) Remain within geographic boundary, as set forth in writing by the Community Corrections Officer."  CP 110.  Hernandez argues this condition is unconstitutionally vague, contending that it violates due process because it does not proscribe the geographic region within which he must remain but rather leaves it to the unfettered discretion of his CCO.

Under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, due process "requires that citizens have fair warning of proscribed conduct."  *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008).  As such, a community custody provision that does not provide this warning will be considered unconstitutionally vague.  *Id.* at 752-53.

"A condition of community custody is unconstitutionally vague if it either fails to give fair warning of what is forbidden or fails to give ascertainable standards that will prevent arbitrary enforcement."  *State v. Johnson*, 197 Wn.2d 740, 747, 487 P.3d 893 (2021).  Hernandez argues that delegating geographic restrictions to the CCO, without providing the CCO with guidance or clarification on how those restrictions are to be set,

14

fails to give ascertainable standards that will prevent arbitrary enforcement. This court

has previously agreed with this statement in at least two unpublished opinions. *See In re*

*Pers. Restraint of Bratcher*, No. 39758-1-III, slip op. at *2-3 ( Wn. Ct. App. Apr. 2,

2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/397581_unp.pdf; *In re*

*Pers. Restraint of Alaniz*, No. 39631-2-III, slip op. at *6 (Wn. Ct. App. Mar. 21, 2024)

(unpublished), https://www.courts.wa.gov/opinions/pdf/396312_unp.pdf.

Division One of this court recently disagreed with our unpublished decisions in

*State v. Lundstrom*, __ Wn. App. 2d __, 572 P.3d 1243 (2025). In *Lundstrom*, the court

held that the same condition imposed on Hernandez was not vague as failing to provide

ascertainable standards. Instead, the court held that the condition was specifically

authorized, citing RCW 9.94A.703(1)(b), (3)(a) and 9.94A.704(3)(b). Under RCW

9.94A.703(3)(a), a sentencing court has discretion to order an offender to "[r]emain

within, or outside of, a specified geographical boundary". Similarly, when DOC

supervises an offender, "the department shall at a minimum instruct the offender to . . .

Remain within prescribed geographical boundaries." RCW 9.94A.704(3)(b). We agree

with Lundstrom that these statutes authorize a court and DOC to define geographical

boundaries within which an offender must remain.[4]

---

[4] We note that while a sentencing court has the authority to order an offender to remain either within or outside of specific geographic boundary, DOC's authority is limited to requiring that offender remain within a prescribed boundary. The statute does not grant DOC the authority to exclude the offender from a particular area.

In rejecting the defendant's constitutional argument that the same community custody condition gives CCOs "'unfettered discretion to arbitrarily' set geographical boundaries," the *Lundstrom* court noted that a CCO's authority to impose conditions is limited and must be "'reasonably related to . . . [t]he crime of conviction, the offender's risk of reoffending, or the safety of the community.'" *Lundstrom*, 572 P.3d at 1245-46 (alterations in original) (quoting RCW 9.94A.704(7)(b); (2)(a)). . To the extent that an offender believes a geographic restriction is not related to one of these categories, the offender has the right to pursue administrative review. *Id.* at 1246.

We agree with *Lundstrom*'s analysis. Because the statutes specifically authorize DOC to set geographic boundaries as a community custody condition, and such restrictions are limited in application and subject to review, a court's order that recognizes DOC's authority to require a geographic boundary is not vague.

3.  CRIME-RELATED COMMUNITY CUSTODY CONDITIONS

Hernandez challenges community custody conditions 11, 16, 17, 18, 19, 21, 22, 23, and 24 arguing that they are not crime-related and therefore the trial court exceeded its authority. Hernandez did not object to any of these conditions at sentencing. Br. of Appellant at 16. His challenges to conditions 17, 18, and 19 also raise constitutional issues. The State argues that all the conditions were within the trial court's authority but concedes that 17, 18, and 19 are not crime related. We address each challenged condition in turn.

16

A. *Alcohol and Drug Related Conditions—11, 21, 22, 23, and 24*

Hernandez challenges several community custody conditions that pertain to alcohol and drugs, arguing they are not crime-related:

> (11) That you complete a drug/alcohol evaluation and complete all recommendations for further evaluation, treatment, and/or monitoring to include medication management;
>
> . . . .
>
> (21) That you must not use, purchase, possess or control any alcohol;
>
> (22) That you must stay out of establishments, such as bars, taverns, casinos, and cocktail lounges, where alcohol is the primary beverage served, without prior approval from your CCO;
>
> (23) That you must not use, purchase, possess or control any marijuana;
>
> (24) That you must not enter any establishments whose primary purpose is the sale of Marijuana/THC, without prior approval from your CCO.

CP at 110-11.

> i) *Conditions 21 and 23—using, purchasing, possessing, or controlling alcohol or marijuana*

Beginning with community custody conditions 21 and 23, both conditions are statutorily valid and thus not an abuse of discretion. As previously discussed, some community custody conditions must be crime-related while others do not. In particular, RCW 9.94A.703(3)(e) is a discretionary condition that authorizes a court to order the offender to "[r]efrain from possessing or consuming alcohol." Likewise, RCW 9.94A.703(2)(c) is a waivable condition that states that a court shall order an offender to "[r]efrain from possessing or consuming controlled substances."

17

Our Washington Supreme Court has recently clarified this issue and held "it is undisputed" that "conditions prohibiting alcohol and drug use [are] validly imposed pursuant to [a] sentencing court's statutory authority." *State v. Nelson*, 4 Wn.3d 482, 503-04, 565 P.3d 906 (2025). As such, the conditions are valid.

> ii) *Conditions 11, 22, and 24—completing a drug/alcohol evaluation along with recommended treatment and staying out of establishments where alcohol is the primary beverage served or whose primary purpose is the sale of marijuana*

We decline to review conditions 11, 22 and 24 because Hernandez did not object to these conditions and the record is insufficient to provide meaningful review. Although both conditions relate to drugs and alcohol like conditions 21 and 23, they pertain to more than just the possession or consumption of drugs and alcohol. For this reason, conditions 22 and 24 would fall under RCW 9.94A.703(3)(f), which allows a court to order an offender to "[c]omply with any crime-related prohibitions." Likewise, for condition 11, RCW 9.94A.703(3)(c) allows a court to order an offender to participate in "crime-related treatment or counseling services," but it must be crime-related. A crime-related prohibition means "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted" and may include "affirmative acts necessary to monitor compliance with the order of a court." RCW 9.94A.030(10).

Here, the record provides some information suggesting that alcohol and marijuana use may have contributed to the offense. Nevertheless, because Hernandez did not object to the conditions at sentencing, neither the State nor the court were given an opportunity to develop the record. We therefore decline to review these challenges. *See Peters*, 10 Wn. App. 2d at 591 ("We are not required to consider an argument that a sentencing condition is not crime related when the offender had the opportunity to raise the contention in the trial court, creating a record, and failed to do so.").

B. *Sexual or Sexual Relationship Condition—16*

Hernandez next contends community custody condition 16 is not crime-related, requiring removal or modification. The condition states:

(16) That you do not engage in a dating or sexual relationship without approval from your your [sic] CCO. You must disclose your status as a sex offender and the nature of your offending to include un-adjudicated victims to anyone with whom you intend to begin such a relationship. The disclosure must be verified by your CCO;

CP at 110.

A similar argument was raised in *State v. Autrey*, where the defendant argued that a prior approval condition as it related to adult sexual contact did not relate to crimes involving children and the court disagreed. 136 Wn. App. 460, 150 P.3d 580 (2006). In particular, the court explained that "a court is generally permitted to impose crime-related prohibitions on a convicted sex offender's period of community custody to protect the public and offer the offender an opportunity for self-improvement." *Id*. at 468.

19

Importantly, it noted that an offender's freedom of "choosing even adult sexual partners is reasonably related to their crimes because potential romantic partners may be responsible for the safety of live-in or visiting minors." *Id.*

The same logic applies here. Hernandez pleaded guilty to second degree rape of a child committed against his stepdaughter. Although Hernandez is currently in a long-term relationship, there is still a possibility of dating or sexual relationships with future partners. And this possibility reasonably relates to his crime of second degree rape of a child because those partners may be responsible for the safety of minors. As such, the condition is crime related, and the court did not abuse its discretion by imposing this condition.

Hernandez acknowledges the legitimate concern that he should not have access to children through an adult relationship, but he contends that condition 16 can be modified to require notification of any dating relationship with a person who has a minor child. Br. of Appellant at 36. However, as an appellate court, our review is limited to whether the trial court abused its discretion by imposing a condition that either is or is not crime-related and because this condition is crime-related, we find no abuse of discretion. *See Bahl*, 164 Wn.2d at 753 ("[I]mposing conditions of community custody is within the discretion of the sentencing court and will be reversed if manifestly unreasonable.").

C.  *Internet Conditions—17, 18, and 19*

Hernandez argues that community custody condition 17, 18, and 19 are not

statutorily authorized because they are not crime related.  The State concedes that the

conditions are not tied in any way to Hernandez's crime of conviction.  The conditions

state:

>    (17) That you may not own/use/possess an internet capable device
> without first completing a safety plan and meeting with your CCO to fully
> and accurately complete the "Social Media and Electronic Device
> Monitoring Agreement" DOC Form # 11-080.  You must install a
> monitoring program, at your own expense, and your CCO must be your
> designated accountability partner;
>
>    (18) That you must not use the internet to seek out sexual
> conversations or sexual partners without prior approval from your CCO;
>
>    (19) That you must not access on-line chatrooms, social media,
> dating websites, and/or apps, without prior approval from your CCO.

CP at 111.

We accept the State's concession and remand to strike conditions 17, 18, and 19.

As the State notes, although the PSI discusses Hernandez's alleged use of sexually

explicit materials and the allegation that he exposed K.G. to some of those materials,

there is nothing in the record discussing a factual basis that links Hernandez's criminal

acts with internet use.  As such, the conditions are not crime-related and should be struck.

4.   STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, Hernandez contends that none of his biological children were able to speak on his behalf at sentencing because of a law that was passed the day before sentencing.

Hernandez does not identify the statute he is discussing, but at sentencing the State objected to Hernandez calling character witnesses at sentencing citing RCW 9.94A.500. Relevant to Hernandez's sentencing, this statute outlines what the court is to consider at sentencing:

> The court shall consider the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history, and allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed.

RCW 9.94A.500(1).

Despite the State's objection and reference to this statute at Hernandez's sentencing, the court allowed Hernandez's wife to testify on his behalf. When the court asked Hernandez's attorney if he planned to present any other testimony, the attorney indicated that he did not have any other witnesses.

Because Hernandez does not show error or prejudice, we conclude that Hernandez does not raise any issues in his SAG that warrant relief.

We affirm community custody conditions 8, 11, 13, 14, 15, 16, 21, 22, 23, and 24. We remand for the limited purpose of striking conditions 17, 18, and 19 for not being crime related.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Murphy, J.